



1  CHRISTOPHER J. COX (Bar No. 151650)
   Email: chris.cox@weil.com
2  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
3  Redwood Shores, CA  94065
   Telephone: (650) 802-3000
4  Facsimile: (650) 802-3100

5  Attorneys for Defendants
   CONTINUUM MANAGED SERVICES, LLC,
6  MICHAEL GEORGE, and SUMMIT PARTNERS, L.P.

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 DSSDR, LLC, a Florida Corporation; and
   ANDREW G. BENSINGER, an Individual,

12                    Plaintiffs,

13

14      vs.

15 ZENITH INFOTECH LTD, an Indian Corporation;
   AKASH SARAF, an Individual; CONTINUUM
16 MANAGED SERVICES, LLC, a Delaware
   Corporation; fka ZENITH RMM; MICHAEL
17 GEORGE, an Individual; SUMMIT PARTNERS,
   L.P., a Delaware Limited Partnership; and, DOES 1
18 through 200, inclusive,

19                    Defendant.

20



Case No.

**CV 12 4336**

(Alameda Superior Court Case No.
RG12642426)

**LB**

**DEFENDANTS' CONTINUUM
MANAGED SERVICES, LLC,
MICHAEL GEORGE AND SUMMIT
PARTNERS, L.P.'S NOTICE OF
REMOVAL OF ACTION UNDER
U.S.C. § 1441**

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

1     PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1441 and 1446, Defendants

2  Continuum Managed Services, LLC ("Continuum"), Michael George, Summit Partners, L.P.

3  ("Summit," and, collectively with Continuum and Michael George, the "Continuum Defendants"),

4  with the consent of Akash Saraf and Zenith Infotech Ltd ("Infotech" and, together with Akash

5  Saraf and the Continuum Defendants, the "Defendants"), hereby remove this action from the

6  Superior Court of California, County of Alameda, to this Court, on the ground that this Court has

7  original jurisdiction over this action under 28 U.S.C. § 1332.

8

9                           **BACKGROUND AND NATURE OF THE ACTION**

10     1.     On August 6, 2012, plaintiffs DSSDR, LLC ("DSSDR") and Andrew G. Bensinger

11  (collectively, "Plaintiffs") commenced this action (the "Action") by filing a complaint (the

12  "Complaint"), entitled *DSSDR, LLC, et al. v. Zenith Infotech Ltd, et al.*, Case No. RG12642426, in

13  the Superior Court for the State of California, County of Alameda (the "California State Court").

14  Continuum was served with a copy of the Complaint on August 14, 2012.

15

16     2.     Notwithstanding that counsel for DSSDR knew that the Continuum Defendants are

17  represented by counsel (and did not disclose this fact to the California State Court) and that

18  complete diversity of citizenship exists which gives the federal courts original jurisdiction over this

19  dispute, Plaintiffs sought and obtained an ex parte temporary restraining order ("TRO") from the

20  California State Court.  On August 15, 2012, Continuum was served with a copy of the TRO,

21  which set a hearing for two days later, on August 17, 2012, to consider extending the TRO.

22     3.     Copies of all process, pleadings, and orders served upon the Continuum Defendants

23  in this Action are attached hereto as Exhibits 1 and 2.

24

25     4.     Plaintiffs' Complaint purportedly arises out of a license agreement dated August 19,

26  2009 between DSSDR and Infotech (which is attached to the Complaint).  None of the Continuum

27  Defendants are parties to this license agreement.  Plaintiffs allege nine causes of action which

28  assert that Infotech's sale of one of its three businesses, its remote monitoring and management

1  business (the "RMM Business"), to Continuum in September of 2011 somehow harmed Plaintiffs.

2  Plaintiffs allege that the sale of the RMM Business constituted a violation of various common-law

3  duties by the Defendants and that the sale breached the license agreement.  Plaintiffs seek

4  compensatory, punitive, and exemplary damages in excess of $75,000, as well as equitable

5  (including injunctive) relief, declaratory relief, and costs.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

8      5.      As this Notice of Removal has been filed within thirty days of Defendants' filing of

9  the Complaint and Defendants' receipt of the initial pleading setting forth the claim for relief upon

10  which this Action is based, it is timely under 28 U.S.C. § 1446(b).

12      6.      For the purposes of this Notice of Removal, venue is proper in this district because

13  it embraces the county in which the Action was filed (the County of Alameda). *See* 28 U.S.C.

14  84(a), 1441, 1446(a).

15      7.      The Continuum Defendants' filing of this Notice of Removal is without prejudice to

16  Defendants' right later to seek further relief including, without limitation, a transfer of this Action

17  under 28 U.S.C. § 1404 on the grounds that, *inter alia*, (i) none of the Plaintiffs is a California

18  resident or corporation; (ii) none of the Defendants is a California resident or corporation; (iii) the

19  evidence and witnesses pertinent to the resolution of Plaintiffs' claims are not located in California

20  but are, rather, located on the east coast of the United States and in India; (iv) according to

21  Plaintiffs' own allegations, California law does not govern their claims for breach of contract; and

22  (v) none of the material events alleged in the Complaint occurred in California.

24      8.      In accordance with 28 U.S.C. § 1446 and the Federal Rules of Civil Procedure, the

25  Continuum Defendants will promptly: (a) file a true and correct copy of this Notice of Removal

26  with the clerk of the Superior Court of California, County of Alameda; (b) serve a true and correct

27  copy of this Notice of Removal on all adverse parties; and (c) file with this Court a Certificate of

28  Service of Notice to Adverse Parties of Removal to Federal Court.

US_ACTIVE:\44074386\10\82196.0003

9.    The Continuum Defendants, through their counsel, have executed this Notice of Removal subject to and without waiving any defenses and rights available to them.  As reflected in the letter from counsel for Akash Saraf and Infotech attached as Exhibit 3, Akash Saraf and Infotech have consented to the removal of the Action.

## GROUNDS FOR REMOVAL

10.    The Defendants are entitled to remove this Action under 28 U.S.C. § 1441(a) because this Court has original diversity subject matter jurisdiction over the Action pursuant to 28 U.S.C § 1332.

11.    Under 28 U.S.C. § 1332(a)(3), diversity jurisdiction exists where the dispute is "between citizens of different States and in which citizens or subjects of a foreign state are additional parties," and where the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C § 1332(a)(3).

Diversity of Citizenship

12.    The present action concerns a dispute "between citizens of different States and in which citizens or subjects of a foreign state are additional parties," and, accordingly, there is complete diversity among the parties.  28 U.S.C § 1332(a)(3).

13.    According to the Complaint, plaintiff DSSDR is "a Florida limited liability corporation with its principle place of business located in Windermere, Florida, and Plaintiff Andrew G. Bensinger is "a resident of the State of Florida." *See* Complaint ¶¶ 1 & 3.

14.    As alleged in the Complaint, defendant Continuum is "a limited liability corporation organized under the laws of the State of Delaware with it [*sic*] principal place of business…in…Pennsylvania" and that defendant Summit is "a limited partnership organized under the laws of the State of Delaware with it [*sic*] principal place of business in Boston,

US_ACTIVE:\44074386\10\82196.0003

1    Massachusetts." Complaint ¶¶ 10 & 14. Defendant Michael George is a resident of the State of

2    Massachusetts.

3

4    15.    The Complaint alleges that defendant Akash Saraf "is a citizen of the country of

5    India" and that defendant Infotech "is a foreign corporation duly organized under the laws of the

6    country of India with its principle place of business in Mumbai, India." Complaint ¶¶ 5-6.

7    16.    Under 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious

8    names is disregarded, and only the citizenship of named defendants is evaluated for the purposes

9    determining diversity jurisdiction.

10

11   17.    Based on the foregoing, this Court has diversity jurisdiction pursuant to 28 U.S.C. §

12   1332(a)(3).

13   Amount in Controversy

14

15   18.    The allegations in the Complaint demonstrate that the amount in controversy

16   exceeds $75,000, exclusive of costs and interest. *See* 28 U.S.C. § 1446(c)(2) ("If removal of a civil

17   action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in

     good faith in the initial pleading shall be deemed to be the amount in controversy"); *see also*
18
     *Martinez v. PRLAP, Inc.*, No. 2:12-cv-00345-MMD-RJJ, 2012 WL 2859933, at *2 (D. Nev. July
19
     11, 2012) (denying motion to remand where it was "facially evident" from the complaint that the
20
     amount in controversy exceeded $75,000) (*citing Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117
21
     (9th Cir. 2004)).
22

23   19.    In the Complaint, Plaintiffs seek, with regard to the first, second, and third causes of

24   action, "[p]unitive and exemplary damages equal to at least three times the amount of

25   compensatory damages awarded herein, but not less than $1,000,000.00." Complaint at p. 26.

26   Further, with regard to each of the five counts of the fourth cause of action, Plaintiffs seek

27   "[c]ompensatory damages in an amount not less than $500,000.00." Complaint at pp. 26-27.

28   Finally, as to the fifth cause of action, Plaintiffs seek "[c]ompensatory damages in an amount not

US ACTIVE:\44074386\10\82196.0003

1    less than $500,000.00" and "[p]unitive and exemplary damages equal to at least three times the

2    amount of compensatory damages awarded herein, but not less than $1,000,000.00."[1]  Complaint

3    at p. 27.

4        20.    Accordingly, the amount in controversy exceeds $75,000 exclusive of interests and

5    costs.

6

7        21.    No admission of fact, law, liability or damages is intended by this Notice of

8    Removal, and all defenses, affirmative defenses, objections and motions hereby are reserved.

9        22.    The Continuum Defendants reserve the right to submit additional evidence and

10   argument as needed to supplement and support this "short and plain statement of the grounds for

11   removal." 28 U.S.C. § 1446(a).

12

13       BASED ON THE FOREGOING, the Continuum Defendants hereby remove the Action

14   from the Superior Court of the State of California, for the county of Alameda, to the United States

15   District Court for the Northern District of California.

16   DATED:  August 16, 2012                         Respectfully submitted,

17

18                                                   WEIL, GOTSHAL & MANAGES LLP

19

20                                                   By: _Christopher J. Cox by_

21                                                       Christopher J. Cox

22                                                   WEIL, GOTSHAL & MANGES LLP
                                                     201 Redwood Shores Parkway
23                                                   Redwood Shores, CA 94065
                                                     Telephone: (650) 802-3000
24                                                   Facsimile: (650) 802-3100

25

26

27   [1] *Bell v. Preferred Life Assur. Soc'y of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both
     actual and punitive damages are recoverable under a complaint each must be considered to the
28   extent claimed in determining jurisdictional amount.").

     NOTICE OF REMOVAL                          5                              Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Defendant
CONTINUUM MANAGED SERVICES,
LLC, MICHAEL GEORGE, and SUMMIT
PARTNERS, L.P.

US_ACTIVE:\44074386\10\82196.0003

1

## PROOF OF SERVICE

2    I declare that I am employed with the law firm of Weil, Gotshal & Manges LLP,
whose address is 201 Redwood Shores Parkway, Redwood Shores, California 94065-1175
3 (hereinafter "WGM"). I am not a party to the within cause, and I am over the age of eighteen
years. I further declare that on August 16, 2012, I served a copy of:

4

**Defendants' Continuum Managed Services, L.L.C., Michael George and Summit Partners,**
5    **L.P.'s Notice of Removal of Action Under U.S.C. § 1441**

6

7    ☒  **BY U.S. MAIL** by placing a true copy thereof enclosed in a sealed
envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at
8 WGM in accordance with WGM's ordinary business practices. I am readily familiar with WGM's
practice for collection and processing of mail, and know that in the ordinary course of WGM's
9 business practice that the document(s) described above will be deposited with the U.S. Postal
Service on the same date as sworn to below.

10    ☒  **BY ELECTRONIC SERVICE** by electronically mailing a true and
correct copy through WGM's electronic mail system to the email address(es) set forth in the
11 service list below.

12    ☐  **BY OVERNIGHT DELIVERY** by placing a true copy thereof enclosed
in a sealed envelope with overnight delivery fees provided for, addressed as follows, for
13 collection by Federal Express at WGM in accordance with WGM's ordinary business practices. I
am readily familiar with WGM's practice for collection and processing of correspondence for
14 overnight delivery and know that in the ordinary course of WGM's business practice the
document(s) described above will be deposited by an employee or agent of WGM in a box or
15 other facility regularly maintained by Federal Express for collection on the same day that the
document(s) are placed at WGM.

16

17    ☐  **BY PERSONAL SERVICE** by placing a true copy thereof enclosed in a
sealed envelope to be delivered by messenger to the offices of the addressee(s) (and left with an
18 employee or person in charge of addressee's office), as stated below, during ordinary business
hours on August 16, 2012.

19 Paul J. Steiner
Law Offices of Paul J. Steiner
20 550 California Street, Suite 700,
Sacramento Tower
21 San Francisco, California 94104
Phone: 415-981-6100

22

23

24    Executed on August 16, 2012 at Redwood Shores, California.  I declare under
penalty of perjury under the laws of the United States of America that the foregoing is true and
25 correct.

26            /s/ Janine Chong
              Janine Chong
27

28

PROOF OF SERVICE

# EXHIBIT 1

*10320033*

FILED
ALAMEDA COUNTY

2012 AUG -6  PM 2: 59

CLERK OF THE
BY

1  PAUL J. STEINER (SBN 41117)
   LAW OFFICES OF PAUL J. STEINER
2  550 California Street, Suite 700, Sacramento Tower
   San Francisco, California 94104
3  Telephone: (415) 981-6100
   Facsimile: (415) 984-0950
4

5  Attorneys for Plaintiffs
6  DSSDR, LLC and
   ANDREW G. BENSINGER
7

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                            (Unlimited Jurisdiction)

10

11  DSSDR, LLC, a Florida Corporation; and         Case No.   **RG12642426**
    ANDREW G. BENSINGER, an Individual,
12
                                                   **COMPLAINT** for:
13         Plaintiffs,                             Conspiracy to Commit Intentional Inter-
                                                   ference with Prospective Economic
14  v.                                             Advantage and Contractual Relations;
                                                   Intentional Interference with Contractual
15  ZENITH INFOTECH LTD, an Indian                 Relations;
    Corporation; AKASH SARAF, an                   Intentional Interference with Prospective
16  Individual; CONTINUUM MANAGED                  Economic Advantage:
    SERVICES, LLC, a Delaware Corporation;         Breach of Contract;
17  fka ZENITH RMM; MICHAEL GEORGE,                Declaratory Relief;
    an Individual; SUMMIT PARTNERS, L.P.,          Imposition of a Constructive Trust;
18  a Delaware Limited Partnership; and,           Permanent Injunction;
    DOES 1 through 200, inclusive,                 an Accounting; and,
19                                                 Damages
20         Defendants.
21
   _____/
22

23         Plaintiffs allege as follows:

24                          **GENERAL ALLEGATIONS**

25                              **THE PARTIES**

26      1.     At all times herein mentioned, plaintiff DSSDR, LLC (hereinafter "DSSDR") was
27
28  and currently is a Florida limited liability corporation with its principle place of business located

   COMPLAINT
   DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                    1

in Windermere, Florida.

2.    At all times herein mentioned, DSSDR was and currently is in the business of creating computer technical solutions including, but not limited to, computer data backup and disaster recovery and near-time high-availability systems technology that are designed for small and medium businesses in all 50 states of the United States including California and in numerous foreign countries.

3.    At all times herein mentioned, plaintiff ANDREW G. BENSINGER (hereinafter "BENSINGER") was and is currently a resident of the State of Florida.

4.    At all times herein mentioned, BENSINGER was and currently is the sole member, officer and director of DSSDR and as such was and is:  directly and personally liable for any taxes due to the IRS on any monies earned by DSSDR; and, was and is the party who will directly and personally suffer the loss of any income earned by DSSDR, as proximately caused by the acts and activities of defendants, and each of them, as hereinafter alleged.

5.    DSSDR and BENSINGER (hereinafter, unless otherwise indicated, referred to collectively as DSSDR) are informed, believe and thereon allege that at all times herein mentioned, defendant AKASH SARAF (hereinafter "SARAF") was and currently is a citizen of the country of India, who has traveled widely in the United States, including California, to conduct business on behalf of and for defendant ZENITH INFOTECH, LTD., (hereinafter "ZENITH INFOTECH").

6.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, ZENITH INFOTECH was and currently is a foreign corporation duly organized under the laws of the country of India with its principle place of business in Mumbai, India.



7. DSSDR is informed, believes and thereon alleges that at all times herein mentioned, SARAF was and currently is the Managing Director and Chief Executive Officer of ZENITH INFOTECH and in doing the things hereinafter alleged was either acting personally on his own behalf and/or in his official capacity with ZENITH INFOTECH, as more specifically alleged herein.

8. DSSDR is informed, believes and thereon alleges that at all times herein mentioned, ZENITH INFOTECH was and currently is in the business of providing and/or selling information technology solutions including, but not limited to, hardware and software for computer data backup and disaster recovery and near-time high-availability systems technology through value-added resellers (hereinafter "VARS") to small and medium sized businesses as well as other institutions and entities such as local government agencies, schools and financial institutions.

9. DSSDR is informed, believes and thereon alleges that at all times herein mentioned, ZENITH INFOTECH sold its services and products, as described in paragraph 8, to VARS located in the State of California as well as in other states and also maintained business offices, equipment for servicing its products, employees, bank accounts and other regular business contacts in the State of California, particularly in the County of Alameda.

10. DSSDR is informed, believes and thereon alleges that at all times herein mentioned, CONTINUUM MANAGED SERVICES, LLC, fka Zenith RMM, LLC (hereinafter 'CONTINUUM") was and currently is a limited liability corporation organized under the laws of the State of Delaware with it principle place of business originally in Williamsburg, Pennsylvania, and now located to Cranberry Township, Pennsylvania.

11.   DSSDR is informed, believes and thereon alleges that at all times herein mentioned, defendant MICHAEL GEORGE (hereinafter "GEORGE") was and currently is the Chief Executive Officer of defendant CONTINUUM, and in doing the things hereinafter alleged, was acting on his own behalf, or on his own behalf in the guise of his official capacity with CONTINUUM, and/or or in his official capacity with CONTINUUM.

12.   DSSDR is informed, believes and thereon alleges that at all times herein mentioned, CONTINUUM was and currently is in the business of providing and/or selling information technology solutions including, but not limited to, computer data backup and disaster recovery systems and near-time high-availability systems technology through VARS to small and medium sized businesses  as well as other institutions and entities such as local government agencies, schools and financial institutions.   DSSDR further alleges that at all times herein mentioned, CONTINUUM was and currently is a competitor of DSSDR.

13.   DSSDR is informed, believes and thereon alleges that at all times herein mentioned CONTINUUM sold it services and products to VARS in the State of California as well as in other states and maintained and/or subcontracted employees and equipment for servicing its products in the State of California, particularly in the County of Alameda.

14.   DSSDR is informed, believes and thereon alleges that at all times herein mentioned SUMMIT PARTNERS, L.P. (hereinafter "SUMMIT") was and currently is a limited partnership organized under the laws of the State of Delaware with it principle place of business in Boston, Massachusetts.

15.   DSSDR is informed, believes and thereon alleges that at all times herein mentioned SUMMIT was and currently is in the business of growth equity and credit investing for rapidly growing companies.

16.    DSSDR is ignorant of the true names and capacities of defendants sued herein as Does 1 through 200, inclusive, and therefore sue these defendants by such fictitious names. DSSDR prays leave to amend this complaint to allege said DOE defendants' true names and capacities when ascertained.

17.    DSSDR is informed, believes and thereon alleges that each of the fictitiously named defendants herein is responsible in some manner for the occurrences hereinafter alleged, and that plaintiffs' injuries and damages, as hereinafter alleged, were directly and proximately contributed to or caused by said DOE defendants.

18.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned Does 1 through 200, inclusive, were and are the agents and/or employees of at least one of the specifically named defendants herein, and they of each other, and in doing the things hereinafter alleged were acting within the course and scope of said agency and/or employment.

## FACTS UNDERLYING THE CAUSES OF ACTION HEREIN

19.    On or about August 15, 2009, DSSDR and ZENITH INFOTECH, by and through BENSINGER and SARAF, acting in their official capacities on behalf of said corporate defendants, respectively, entered into a written License Agreement formally known as the "2009 Appliance and Remote License Agreement (hereinafter "License Agreement"), in which DSSDR, as licensor, agreed, for adequate consideration, to license to ZENITH INFOTECH, as licensee, the exclusive, non-transferable (except with prior consent) rights in the agreed-upon license territory to use, market and copy "certain business methods, processes and know-how" more specifically referred to in the License Agreement as "Licensed Technology" (hereinafter "Licensed Technology") that had been developed by DSSDR. Said Licensed Technology included, but was not limited to:

(a) know-how for a client-side data appliance that delivered easy backup and nearly instant server system recovery at multiple levels, from block snapshots of data; and

(b) know-how for remote data storage and data center operations that could be offered to consumers including, but not limited to, use of or access to data vault/storage pools, data restoration, virtual servers, application publishing servers, VPN direct access and fail back. (See Exhibit "A" to the License Agreement, a copy of which, including exhibits thereto, is marked **Exhibit "1"** and is attached hereto and made a part hereof.)

20.    In exchange for DSSDR's performance of its obligations under the License Agreement, ZENITH INFOTECH agreed to pay to DSSDR certain fees, including any late fees and interest, as set forth in Exhibit A to the License Agreement and in conformance with Paragraph 8, therein.

21.    In addition to the fees owed by ZENITH INFOTECH to DSSDR, as heretofore described in paragraph 20, ZENITH INFOTECH also agreed to pay DSSDR, pursuant to Paragraph 13.1 of the License Agreement, seven and one-half percent (7.5%) of the

> "proceeds from the sale of the business and product/service line(s) associated with the Licensed Technology, with the determination of the proceeds and the value of the sale and Licensor's [i.e., ZENITH INFOTECH] 7.5% thereof to be determined mutually by the Parties. . . . Moreover, payment of 7.5% of the proceeds from a sale shall be made a condition to closing of any such permitted sale and distributed to Licensor [i.e., DSSDR] prior to or simultaneously with the closing of any sale or merger transaction involving Licensee [i.e., ZENITH INFOTECH]."

22.    In addition, the License Agreement also either explicitly or implicitly:

(a)    Prohibits unauthorized disclosure of confidential information, trade secrets and/or Licensed Technology by ZENITH INFOTECH or by any assignees, transferees, end users and/or VARS pursuant to paragraphs 1.1, 1.2, 2.1, 6.2 and 13.1 of the License Agreement;

---

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                          6

(b)     Provides for DSSDR's voiding of any assignment or transfer of the License Agreement without DSSDR's prior written consent pursuant to Paragraph 13.1 of the License Agreement, except under limited circumstances not applicable herein; and,

(c)     The enjoining of the sale of ZENITH INFOTECH to any third-party acquirers pursuant to Paragraph 13.1 of the License Agreement for ZENITH INFOTECH's failure agree with DSSDR as to the value of the sale of ZENITH INFOTECH to a third-party acquirer in order to determine the 7.5% payment due DSSDR no later than the closing of said sail.

23.     Pursuant to Paragraph 13.11 of the License Agreement, "the validity, construction and performance of . . . [the License Agreement], and the legal relations among the Parties to . . . [the License Agreement], shall be governed by and construed in accordance with the laws of the State of Florida and the United States, excluding that body of law applicable to conflicts of law." Said 'choice of law' provision of the License Agreement does not apply to the First, Second, Third and Seventh Causes of Action as hereinafter alleged, and that said causes of action should be resolved pursuant to the laws of the State of California. In addition, the 'choice of law' provision may not apply to other causes of action, depending on the court's determination of the application of the law applicable to conflicts of law.

24.     DSSDR is informed, believes and thereon alleges that on some unknown date, but in or about August or September 2011, ZENITH INFOTECH and SUMMIT entered into an agreement in which SUMMIT agreed to purchase ZENITH INFOTECH's RMM product line and services (hereinafter "RMM") for the approximate sum of $55,000,000.00.

25.     Sometime during the negotiations for the purchase of RMM by SUMMIT, SARAF was informed that SUMMIT intended to 'pass' RMM onto another business, such as CONTINUUM, for development and growth purposes and coincidental with its purchase of RMM,

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                                 7

SUMMIT caused CONTINUUM to be incorporated in the State of Delaware for the primary purpose of taking control of RMM from SUMMIT.

26.    Thereafter, following SUMMIT's acquisition of RMM and upon the concomitant availability of CONTINUUM as a duly organized business entity, SUMMIT transferred, assigned, sold or otherwise divested itself of direct control and/or ownership of RMM to CONTINUUM.

27.    DSSDR does not presently have sufficient information as to the exact nature of the business relationship between SUMMIT and CONTINUUM from the date CONTINUUM was incorporated until the present.    Therefore, DSSDR prays leave to amend this complaint to allege said information when it is obtained.  However, DSSDR is informed, believes and thereon alleges that at all times herein mentioned, two employees, agents or representatives of SUMMIT were and currently are on the Board of Directors for CONTINUUM.

28.    DSSDR is informed, believes and thereon alleges that in addition to the purchase price of approximately $55,000,000.00 for RMM, SUMMIT and/or CONTINUUM offered SARAF, personally, as additional consideration for the purchase of RMM, a position as a member of the Board of Directors of CONTINUUM, which SARAF accepted, as well as a personal 15% ownership interest in CONTINUUM, which SARAF also accepted.

29.    DSSDR is further informed, believes and thereon alleges that approximately $48,000,000.00 of the approximate $55,000,000 purchase price for RMM was paid to ZENITH INFOTECH and/or SARAF as partial payment on the purchase and approximately $6,900,000.00 was placed in an escrow account by SUMMIT and/or CONTINUUM to cover, in part, any claims made by third parties to a portion of the sale proceeds and to cover other known and unknown contingencies.

30.    The acquisition of RMM by SUMMIT and/or CONTINUUM constituted a sale of ZENITH INFOTECH to SUMMIT and/or CONTINUUM pursuant to Paragraph 13.1 of the License Agreement because, as DSSDR is informed, believes and thereon alleges, RMM represented substantially all of the assets of ZENITH INFOTECH pursuant to 13.1 of the License Agreement.

31.    The acquisition of RMM by SUMMIT and/or CONTINUUM also created an assignment of the License Agreement or License Technology in breach of Paragraph 13.1 of the License Agreement because, as DSSDR is informed, believes and thereon alleges, the sale of RMM to SUMMIT and/or CONTINUUM permitted access to License Technology by SUMMIT and/or CONTINUUM and their agents and employees.

32.    DSSDR is informed, believes and thereon alleges that at the time ZENITH INFOTECH sold RMM to SUMMIT and/or CONTINUUM, that SUMMIT and/or CONTINUUM were aware of DSSDR's right to declare void any transfer or assignment of the License Agreement by ZENITH INFOTECH for failure by ZENITH INFOTECH to obtain required written consent by DSSDR of any assignment or transfer of the License Agreement and to enjoin, as hereinafter alleged, any sale of ZENITH INFOTECH if any assignees, transferees and/or third-party acquirers of ZENITH INFOTECH fail to comply with the restrictions and requirements of the License Agreement as set forth in Paragraph 13.1.

## FIRST CAUSE OF ACTION

**(Conspiracies to Commit Intentional Interference With Contractual Relations and Prospective Economic Advantage)**

33.    DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations.

---

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                      9

34. DSSDR is informed, believes and thereon alleges that SARAF claims that neither he nor ZENITH INFOTECH transferred, assigned or otherwise hypothecated the License Agreement between DSSDR and ZENITH INFOTECH, or any portion thereof, as part of the sale of RMM to SUMMIT and/or to CONTINUUM.

35. DSSDR is further informed, believes and thereon alleges that SARAF claims that SUMMIT and/or CONTINUUM were never granted access by either SARAF or any other employee, agent or representative of ZENITH INFOTECH to any of DSSDR's Licensed Technology.

36. However, DSSDR is informed, believes and thereon alleges that at all times herein mentioned, SARAF knew that the sale of RMM included ZENITH INFOTECH's customer list of VARS for RMM, which in turn permitted access by SUMMIT and/or CONTINUUM to the names and/or databases that identified value-added resellers (VARS) of other products and services owned by ZENITH INFOTECH that utilized DSSDR's Licensed Technology, such as Zenith BDR and ARCA.

37. DSSDR is informed, believes and thereon alleges that all times herein mentioned, GEORGE knew, as a result of obtaining said information from SARAF, that the acquisition of the customer list for RMM by SUMMIT and/or CONTINUUM would, in fact, allow SUMMIT and/or CONTINUUM access to the information identifying ZENITH INFOTECH's VARS, who also sell other products and services such as Zenith BDR and ARCA, which utilize DSSDR's License Technology.

38. DSSDR is also informed, believes and thereon alleges that at some time prior to the sale of RMM, that SUMMIT, CONTINUUM and/or GEORGE had been informed by SARAF of the License Agreement between DSSDR and ZENITH INFOTECH that provided, *inter alia*, that

---

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.

10

DSSDR receive fees from ZENITH INFOTECH calculated on ZENITH INFOTECH's sales of products to VARS that utilized DSSDR's Licensed Technology, such as Zenith BDR and ARCA.

39.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, SUMMIT, CONTINUUM and/or GEORGE similarly also knew that it was a standard and repeating event for many of ZENITH INFOTECH's VARS to renew their contractual relationship with ZENITH INFOTECH at the conclusion or expiration of any given contractual period and that DSSDR would derive income in the form of fees from those contract renewals for products and services provided by ZENITH INFOTECH to its VARS that utilized DSSDR's License Technology.

40.    DSSDR is informed, believes and thereon alleges that all times herein mentioned, SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the course and scope of his official capacity as set forth above in paragraph 18, agreed, either tacitly or explicitly, to interfere with DSSDR's contractual relations with ZENITH INFOTECH and with DSSDR's prospective economic advantages existing as a result of these prior contractual relations by *inter alia* inducing ZENITH INFOTECH's VARS to:

(a) cancel their ongoing contracts with ZENITH INFOTECH by offering said pre-existing customers credits towards their prior purchases of systems and appliances from ZENITH INFOTECH if said customers purchased similar products and services provided by CONTINUUM; and,

(b) not to renew their contracts with ZENITH INFOTECH for the products and services provided by ZENITH INFOTECH upon expiration of their present contracts, thereby reducing or extinguishing fees paid to DSSDR by ZENITH INFOTECH pursuant to the License Agreement.

41.     DSSDR is informed, believes and thereon alleges that all times herein mentioned, SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the course and scope of his official capacity as set forth above in paragraph 18, in furtherance of their agreement to interfere with DSSDR's contractual relations and prospective economic advantages arising from those contractual relations with ZENITH INFOTECH, agreed to and did commit overt acts in furtherance of said conspiracies, including but not limited to:

(a) joint sharing of physical business locations by CONTINUUM and ZENITH INFOTECH;

(b) the sharing and/or transfer of hundreds of employees from ZENITH INFOTECH to CONTINUUM;

(c) the development of an apparent joint advertising scheme that was specifically directed towards those VARS whose contractual relations with ZENITH INFOTECH generated fees paid to DSSDR by ZENITH INFOTECH to encourage said customers to cancel their pre-existing contracts with ZENITH INFOTECH and/or not to renew said contracts upon their expiration dates;

(d) CONTIUUM's and ZENITH INFOTECH's joint marketing of their products and services by the use of a shared web sites on the internet, joint telephone access, and joint publications identifying their products lines and services; and,

(e) the creation of names for alleged new products and services offered by CONTINUUM that were substantially similar to the names of products and services that utilized DSSDR's License Technology that were already offered by ZENITH INFOTECH and the offer of said new product lines and services to ZENITH INFOTECH's current VARS, all in an effort to convince said clients into believing that the products and services offered by CONTINUUM were

the same or without significant differences from the products and services already offered by ZENITH INFOTECH that utilized DSSDR's License Technology.

42.    That as a direct and proximate result of the conspiracy alleged above, plaintiffs have suffered monetary damages in an amount not yet ascertained and pray leave to amend this complaint and insert said sums when ascertained and/or according to proof presented at the time of trial.

43.    DSSDR is informed, believes and thereon alleges that all times herein mentioned the aforementioned wrongful acts by SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the course and scope of his official capacity as set forth above in paragraph 18, were intentional, oppressive, malicious and made or committed with the intent to cause injury to DSSDR and DSSDR is therefore entitled to punitive and exemplary damages equal to at least three times the amount of compensatory damages awarded herein, but not less than $1,000,000.00.

WHEREFORE, DSSDR prays as set forth below.

## SECOND CAUSE OF ACTION
### (Intentional Interference with Contractual Relations)

44.    DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations and paragraphs 34 through 41, inclusive, of the First Cause of Action.

45.    DSSDR is informed, believes and thereon alleges that all times herein mentioned, SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the course and scope of his official capacity as set forth above in paragraph 18, intentionally interfered with DSSDR's contractual relations with ZENITH INFOTECH by inducing ZENITH

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                    13

INFOTECH's VARS and only ZENITH INFOTECH's VARS, in California and other locations, to: (1) cancel their ongoing contracts with ZENITH INFOTECH by offering said pre-existing customers credits towards their prior purchases of products and services from ZENITH INFOTECH for similar products and services from CONTINUUM; and, (2) not renew their contracts with ZENITH INFOTECH upon expiration of their present contracts.

46.    As a direct and proximate result of the acts by SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the course and scope of his official capacity as set forth above in paragraph 18, DSSDR's contractual relations with ZENITH INFOTECH have been impaired and plaintiffs have suffered monetary damages in an amount not yet ascertained and pray leave to amend this complaint and insert said sums when ascertained and/or according to proof presented at the time of trial.

47.    DSSDR is informed, believes and thereon alleges that all times herein mentioned the aforementioned wrongful acts by SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the course and scope of his official capacity as set forth above in paragraph 18, were intentional, oppressive, malicious and made or committed with the intent to cause injury to DSSDR and DSSDR is therefore entitled to punitive and exemplary damages equal to at least three times the amount of compensatory damages awarded herein, but not less than $1,000,000.00.

WHEREFORE, DSSDR prays as set forth below.

### THIRD CAUSE OF ACTION
**(Intentional Interference with Prospective Economic Advantage)**

48.    DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations, paragraphs 34 through 41, inclusive, of the First Cause of

1    Action, and paragraph 45 of the Second Cause of Action.

2        49.    DSSDR is informed, believes and thereon alleges that all times herein mentioned,

3    SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the

4    course and scope of his official capacity as set forth above in paragraph 18, intentionally interfered

5    

6    with DSSDR's prospective economic advantages with ZENITH INFOTECH by inducing

7    ZENITH INFOTECH's VARS, and only ZENITH INFOTECH's VARS, in California and other

8    locations to:  (1) cancel their ongoing contracts with ZENITH INFOTECH by offering said pre-

9    existing customers credits towards their prior purchases of systems and appliances from ZENITH

10   INFOTECH for similar products and services from CONTINUUM; and, (2) not renew their

11   

12   contracts with ZENITH INFOTECH for the products and services provided by ZENITH

13   INFOTECH upon expiration of their present contracts.

14       50.    As a direct result of the acts by SARAF, acting on his own behalf, and GEORGE,

15   acting on his own behalf and/or within the course and scope of his official capacity as set forth

16   

17   above in paragraph 18, DSSDR's contractual relations with ZENITH INFOTECH have been

18   impaired and plaintiffs have suffered monetary damages in an amount not yet ascertained and pray

19   leave to amend this complaint and insert said sums when ascertained and/or according to proof

20   

21   presented at the time of trial.

22       51.    DSSDR is informed, believes and thereon alleges that all times herein mentioned

23   the aforementioned wrongful conduct by SARAF, acting on his own behalf, and GEORGE, acting

24   on his own behalf and/or within the course and scope of his official capacity as set forth above in

25   paragraph 18, were intentional, oppressive, malicious and made or committed with the intent to

26   

27   cause injury to DSSDR and plaintiffs are therefore entitled to punitive and exemplary damages

28

equal to at least three times the amount of compensatory damages awarded herein, but not less

than $1,000,000.00.

WHEREFORE, DSSDR prays as set forth below

### FOURTH CAUSE OF ACTION
### (Breach of Contract)

52.    DSSDR re-alleges herein, as to all counts below, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations and paragraphs 34 through 41, inclusive, of the First Cause of Action.

53.    DSSDR alleges, as to all counts below, that it has performed all of its obligations under the terms and conditions of the License Agreement that it has been required to perform to date.

### COUNT 1:

54.    On or about May 9, 2012, a demand, by letter, was made upon SARAF in his capacity as managing director and Chief Executive Officer of ZENITH INFOTECH to fulfill the terms and conditions of Paragraph 13.1 of the License Agreement including, but not limited to, making payment to DSSDR for a sum equal to 7.5 % of the purchase price of RMM by SUMMIT plus the value of any other consideration paid or provided to ZENITH INFOTECH and/or SARAF for said transaction. The letter also demanded that ZENITH INFOTECH make timely payment of all fees also due under the License Agreement pursuant to paragraph 8.1 and Exhibit A to the License Agreement and to provide an accounting of all fees.

55.    As of the date of filing of this complaint, DSSDR has not received any payment or any offer to pay any sum or sums from ZENITH INFOTECH and/or SARAF pursuant to Paragraph 13.1 of the License Agreement for the sale of RMM. In addition, DSSDR has received

only partial payment from ZENITH INFOTECH for fees and late charges that are currently due or which have been in arrears pursuant to paragraph 8.1 and Exhibit A to the License Agreement and has not received an accurate accounting of all said arrearages and currently owed fees.

56.    As a result of the foregoing acts and/or omissions to act, ZENITH INFOTECH is in breach of the terms and conditions of the License Agreement and as a result of said breach, plaintiffs have suffered monetary damages in an amount not less than $500,000.00 and pray leave to amend this complaint and insert said sums when ascertained and/or according to proof presented at the time of trial.

## COUNT II:

57.    In addition to the payment of money to DSSDR for the sale of RMM as set forth above in paragraphs 53 and 54, ZENITH INFOTECH was also required, pursuant to Paragraph 13.1 of the License Agreement, to reach an agreement with DSSDR as to the value of the sale and that DSSDR was to receive said payment prior to or current with the close of the transaction. To date, ZENITH INFOTECH has refused to discuss the value of the sale of RMM and has refused to pay DSSDR its share of the sale proceeds pursuant to Paragraph 13.1 of the License Agreement.

58.    As a result of the aforesaid acts and/or omissions to act by ZENITH INFOTECH, said named defendant is in breach of the terms and conditions of the License Agreement and as a result of said breach, plaintiffs have suffered monetary damages in an amount not less than $500,000.00 and pray leave to amend this complaint and insert said sums when ascertained and/or according to proof presented at the time of trial.

59.    In addition, ZENITH INFOTECH's failure to establish the value of the sale of RMM to SUMMIT and/or CONTINUUM with DSSDR constitutes a breach of the License Agreement for which DSSDR is entitled to enjoin the sale of RMM.

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                          17

## COUNT III:

60.    The acts by SARAF and/or ZENITH INFOTECH in providing SUMMIT, CONTINUUM and/or GEORGE with access to confidential information, trade secrets and Licensed Technology constitutes a breach of the terms and conditions of the License Agreement. As a result of said breach, plaintiffs have suffered monetary damages in an amount not less than $500,000.00 and pray leave to amend this complaint and insert the correct sums when ascertained and/or according to proof presented at the time of trial.

## COUNT IV:

61.    The use by SUMMIT, CONTINUUM and/or GEORGE of confidential information, trade secrets and/or Licensed Technology without executing a written acceptance of the terms and conditions of the License Agreement as assignees, transferees and/or third-party acquirers from ZENITH INFOTECH constitutes a breach of the terms and conditions of the License Agreement and as a result of said breach, plaintiffs have suffered monetary damages in an amount not less than $500,000.00 and pray leave to amend this complaint and insert the correct sums when ascertained and/or according to proof presented at the time of trial.

62.    In addition, the use by SUMMIT, CONTINUUM and/or GEORGE of confidential information, trade secrets and/or Licensed Technology, without executing a written acceptance of the terms and conditions of the License Agreement as assignees, transferees and/or third-party acquirers from ZENITH INFOTECH constitutes a breach of the License Agreement for which DSSDR is entitled to enjoin the assignment of the License Agreement.

## COUNT V

63.    The assignment and/or transfer of the License Agreement by ZENITH INFOTECH to SUMMIT and/or CONTINUUM without DSSDR's prior written consent constitutes a breach of

1   the License Agreement and as a result of said breach, plaintiffs have suffered monetary damages

2   in an amount not less than $500,000.00 and pray leave to amend this complaint and insert the

3   correct sums when ascertained and/or according to proof presented at the time of trial.

4
5       64.    The assignment and/or transfer of the License Agreement by ZENITH INFOTECH

6   to SUMMIT and/or CONTINUUM without DSSDR's prior written consent constitutes a breach of

7   the License Agreement pursuant to Paragraph 13.1 and as a result, DSSDR is entitled to declare

8   the assignment as void and/or treat it as a material reach of the License Agreement.

9
10      WHEREFORE, DSSDR prays as set forth below.

11                         **FIFTH CAUSE OF ACTION**
                                  **(Fraud)**
12
13      65.    DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32,

14  inclusive, of the General Allegations and paragraphs 53 through 64, inclusive, of the Fourth Cause

15  of Action.

16      66.    When ZENITH INFOTECH sold RMM to SUMMIT and/or CONTINUUM,

17  SARAF and/or GEORGE, in their individual capacities and/or on behalf of ZENITH INFOTECH

18
19  and CONTINUUM, respectively, informed DSSDR that the sale of RMM did not constitute either

20  a sale of ZENITH INFOTECH or an assignment or transfer of the License Agreement pursuant to

21  paragraph 13.1 the License Agreement.

22      67.    However, none of the named defendants have provided DSSDR with a copy of the

23
24  sale/purchase agreement for RMM and DSSDR has not had the opportunity to review said

25  documents.

26      68.    When SARAF and/or GEORGE, in their individual capacities and/or on behalf of

27  ZENITH INFOTECH and CONTINUUM, respectively, made the representations as set forth

28

---

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                    19

above in paragraph 66 to DSSDR, said named defendants, and each of them, knew said representations to be false but made said false representations with the intention that DSSDR rely upon said misrepresentations.

69.     DSSDR, believing said false representations to be true, reasonably relied upon said false representations and, therefore, was unable to take any steps to ameliorate the damages that eventually resulted from said misrepresentations.

70.     As a direct result of the misrepresentations by said named defendants, and each of them, and DSSDR's reasonable reliance on them, plaintiffs have suffered monetary damages in an amount not less than $500,000.00 and pray leave to amend this complaint and insert the correct sums when ascertained and/or according to proof presented at the time of trial.

71.     DSSDR is informed, believes and thereon alleges that all times herein mentioned the aforementioned wrongful acts by the named defendants, and each of them, were intentional, oppressive, malicious and made or committed with the intent to cause injury to DSSDR and plaintiffs are therefore entitled to punitive and exemplary damages equal to at least three times the amount of compensatory damages awarded herein, but not less than $1,000,000.00.

## SIXTH CAUSE OF ACTION
### (Declaratory Relief)

72.     DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations, paragraphs 34 through 41, inclusive, of the First Cause of Action and paragraphs 53 through 64, inclusive, of the Fourth Cause of Action.

73.     On or about May 9, 2012, DSSDR, via letter to GEORGE in his capacity as Chief Executive Officer of CONTINUUM, notified GEORGE of DSSDR's claim to 7.5 % of the purchase price for RMM as well as any other remuneration of any kind or character provided to

SARAF and/or ZENITH INFOTECH for said transaction. In addition, DSSDR requested that CONTINUUM not disburse any of the funds for the transaction remaining in escrow until final adjudication of DSSDR's claim against ZENITH INFOTECH, SUMMIT and/or CONTINUUM for payment of 7.5% of the sale price for RMM, as set forth in Paragraph 13.1 of the License Agreement or until order of a court. Finally, DSSDR informed CONTINUUM that DSSDR was treating the funds remaining in escrow as being held in constructive trust for DSSDR and that any further disbursement of said funds by CONTINUUM, as the constructive trustee, would be in violation of the fiduciary obligations imposed on CONTINUUM by virtue of said constructive trust.

74.    In response to the aforementioned letter to GEORGE, DSSDR received a written reply in which counsel for CONTINUUM stated that CONTINUUM was not in privity to the License Agreement; that CONTINUUM did not have any duty, fiduciary or otherwise, to secure the money in escrow against future disbursement upon agreement of ZENITH INFOTECH and CONTINUUM; and, that CONTINUUM would not honor DSSDR's requests.

75.    An actual controversy has arisen and now exists between DSSDR and the named defendants, and each of them, concerning their respective rights and duties under the License Agreement in that DSSDR is informed, believes and thereon alleges that:

(a)    ZENITH INFOTECH now claims that DSSDR is not entitled to any payment of any sum or sums pursuant to Paragraph 13.1 of the License Agreement for the sale of RMM to SUMMIT and/or CONTINUUM;

(b)    the named defendants, and each of them, presently claim that DSSDR does not have any viable claim for damages and/or the right to enjoin the sale of RMM by ZENITH INFOTECH to SUMMIT and/or CONTINUUM under the terms and conditions of Paragraph 13.1

of the License Agreement due to ZENITH INFOTECH's failure to pay the 7.5% fee due to DSSDR prior to the actual sale of RMM;

(c) the named defendants, and each of them, presently claim that a constructive trust does not exist as to the remaining sums in escrow for the sale of RMM and, therefore, DSSDR is not the beneficiary of any such constructive trust pursuant to the terms and conditions of Paragraph 13.1 of the License Agreement; and,

(d) neither SUMMIT nor CONTINUUM will execute any written acceptance and assumption of the terms and conditions of the License Agreement previously imposed on ZENITH INFOTECH pursuant to Paragraph 13.1 of the License Agreement.

76. A judicial declaration of rights is necessary and appropriate at this time under the circumstances in order for DSSDR to be able to ascertain its rights and duties under the License Agreement since DSSDR is informed, believes and thereon alleges that it will suffer permanent loss of a portion of the sum remaining in escrow for the sale of RMM to which DSSDR is entitled pursuant to Paragraph 13.1 of the License Agreement, as well as other irreparable damages.

WHEREFORE, DSSDR prays as set forth below.

### SEVENTH CAUSE OF ACTION
### (Imposition of Constructive Trust)

77. DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations, paragraphs 34 through 41, inclusive, of the First Cause of Action, paragraphs 53 through 64, inclusive, of the Fourth Cause of Action and paragraphs 73 through 75, inclusive of the Sixth Cause of Action.

78. DSSDR is informed, believes and thereon alleges that SUMMIT, CONTINUUM and/or GEORGE has knowledge of the location of the subject escrow account, the amount of

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                    22

1  funds in the escrow account, and are the only parties to this action with authority to issue escrow

2  instructions for the disbursement of said funds.

3      79.    DSSDR has a present equitable and legal interest in the funds in the subject escrow

4
5  account equal to 7.5% of the actual value of the sale of RMM to SUMMIT and/or CONTINUUM

6  by ZENITH INFOTECH.

7      80.    SUMMIT and/or CONTINUUM has been informed of DSSDR's equitable and

8  legal claim to the funds in the escrow account equal to 7.5% of the actual sale price paid by

9
10  SUMMIT and/or CONTINUUM to ZENITH INFOTECH for RMM plus any additional

11  remuneration paid or given for the purchase of RMM and that by reason thereof, a constructive

12  trust has been created. As a result, SUMMIT and/or CONTINUUM and ZENITH INFOTECH,

13  their agents, employees and representatives have a fiduciary relationship to DSSDR as a result of

14  the constructive trust previously described herein. Accordingly, SUMMIT and/or CONTINUUM

15
16  and ZENITH INFOTECH, their agents, employees and representatives have a duty to protect

17  DSSDR's interest in the remaining funds presently being held in escrow arising from the sale of

18  RMM.

19      81.    DSSDR is informed, believes and thereon alleges that SUMMIT and/or

20  CONTINUUM presently has no other independent legal or equitable interest or claim to said

21
22  funds in the escrow account superior to DSSDR's claim or interest.

23      WHEREFORE, DSSDR prays as set forth below.

24  /

25  /

26  /

27  /

28  /

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                      23

## EIGHTH CAUSE OF ACTION
### (Accounting)

82.    DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations, paragraphs 34 through 41, inclusive, of the First Cause of Action, paragraphs 53 through 64, inclusive, of the Fourth Cause of Action, paragraph 66 of the Fifth Cause of Action, paragraphs 73 through 75, inclusive, of the Sixth Cause of Action and paragraphs 78 through 81 of the Seventh Cause of Action.

83.    As a result of ZENITH INFOTECH's failure to:

(a) pay all fees, late fees and interest owing and due to DSSDR under the terms and conditions of paragraph 8 and Exhibit A to the License Agreement;

(b) provide DSSDR with a full accounting of the fees owing and due to DSSDR as set forth in the License Agreement; and

(c) agree upon the entire value of the sale of RMM, said sums cannot be ascertained by DSSDR without a full accounting of all transactions that provide the genesis for said sums owed by ZENITH INFOTECH to DSSDR.

84.    In addition, as a result of the acts of those defendants, and each of them, named in the First, Second and Third Causes of Action, DSSDR has been damaged by the interference with his contractual relations as well as interference with his prospective economic advantages. However, DSSDR cannot determine said damages until an accounting is obtained of which VARS were affected by the efforts of said defendants in successfully causing said VARS to cancel contracts with ZENITH INFOTECH and/or to not renew said contracts.

WHEREFORE, DSSDR prays as set forth below.

/