

CHRISTOPHER J. COX (Bar No. 151650)
Email: chris.cox@weil.com
GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendants
CONTINUUM MANAGED SERVICES, LLC,
MICHAEL GEORGE, and SUMMIT PARTNERS, L.P.



## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DSSDR, LLC, a Florida Corporation; and
ANDREW G. BENSINGER, an Individual,

Plaintiffs,

vs.

ZENITH INFOTECH LTD, an Indian Corporation;
AKASH SARAF, an Individual; CONTINUUM
MANAGED SERVICES, LLC, a Delaware
Corporation; fka ZENITH RMM; MICHAEL
GEORGE, an Individual; SUMMIT PARTNERS,
L.P., a Delaware Limited Partnership; and, DOES 1
through 200, inclusive,

Defendants.

Case No. **12 4336**

(Alameda Superior Court Case No. RG12642426)

**DEFENDANTS CONTINUUM MANAGED SERVICES, LLC, MICHAEL GEORGE AND SUMMIT PARTNERS, L.P.S' CORRECTED NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

CORRECTED NOTICE OF REMOVAL                                    Case No.

1    PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1441 and 1446, Defendants

2  Continuum Managed Services, LLC ("Continuum"), Michael George, Summit Partners, L.P.

3  ("Summit," and, collectively with Continuum and Michael George, the "Continuum Defendants"),

4  with the consent of Akash Saraf and Zenith Infotech Ltd ("Infotech" and, together with Akash

5  Saraf and the Continuum Defendants, the "Defendants"), hereby remove this action from the

6  Superior Court of California, County of Alameda, to this Court, on the ground that this Court has

7  original jurisdiction over this action under 28 U.S.C. § 1332.

8                       **BACKGROUND AND NATURE OF THE ACTION**

9        1.    On August 6, 2012, Plaintiffs DSSDR, LLC ("DSSDR") and Andrew G. Bensinger

10  (collectively, "Plaintiffs") commenced this action (the "Action") by filing a complaint (the

11  "Complaint"), entitled *DSSDR, LLC, et al. v. Zenith Infotech Ltd, et al.*, Case No. RG12642426, in

12  the Superior Court for the State of California, County of Alameda (the "California State Court").

13  Continuum was served with a copy of the Complaint on August 14, 2012.

14      2.    On August 10, 2012, notwithstanding that counsel for DSSDR knew that the

15  Continuum Defendants are represented by counsel (and did not disclose this fact to the California

16  State Court), Plaintiffs sought and obtained a temporary restraining order ("TRO") from the

17  California State Court on an ex parte basis without providing notification to Defendants.  On

18  August 15, 2012, Continuum was served with a copy of the August 10, 2012 TRO, which set a

19  hearing for two days later, on August 17, 2012 to consider extending the TRO.

20      3.    Copies of all process, pleadings, and orders served upon the Continuum Defendants

21  in this Action are attached hereto as Exhibits 1 and 2.

22      4.    Plaintiffs' Complaint purportedly arises out of a license agreement dated August 19,

23  2009 between DSSDR and Infotech (which is attached to the Complaint).  None of the Continuum

24  Defendants are parties to this license agreement.  Plaintiffs allege nine causes of action which

25  assert that Infotech's sale of one of its three businesses, its remote monitoring and management

26  business (the "RMM Business"), to Continuum in September of 2011 somehow harmed Plaintiffs.

27  Plaintiffs allege that the sale of the RMM Business constituted a violation of various common-law

28  duties by the Defendants and that the sale breached the license agreement.  Plaintiffs seek

CORRECTED NOTICE OF REMOVAL             1                                Case No.

1  compensatory, punitive, and exemplary damages in excess of $75,000, as well as equitable
2  (including injunctive) relief, declaratory relief, and costs.

3  <center>**PROCEDURAL REQUIREMENTS FOR REMOVAL**</center>

4      5.    As this Notice of Removal has been filed within thirty days of Plaintiffs' filing of
5  the Complaint and Defendants' receipt of the initial pleading setting forth the claim for relief upon
6  which this Action is based, it is timely under 28 U.S.C. § 1446(b).

7      6.    For the purposes of this Notice of Removal, venue is proper in this district because
8  it embraces the county in which the Action was filed (the County of Alameda). *See* 28 U.S.C.
9  84(a), 1441, 1446(a).

10      7.    The Continuum Defendants' filing of this Notice of Removal is without prejudice to
11  Defendants' right later to seek further relief including, without limitation, a transfer of this Action
12  under 28 U.S.C. § 1404 on the grounds that, *inter alia*, (i) none of the Plaintiffs is a California
13  resident or corporation; (ii) none of the Defendants is a California resident or corporation; (iii) the
14  evidence and witnesses pertinent to the resolution of Plaintiffs' claims are not located in California
15  but are, rather, located on the East coast of the United States and in India; (iv) according to
16  Plaintiffs' own allegations, California law does not govern their claims for breach of contract; and
17  (v) none of the material events alleged in the Complaint occurred in California.

18      8.    In accordance with 28 U.S.C. § 1446 and the Federal Rules of Civil Procedure, the
19  Continuum Defendants will promptly: (a) file a true and correct copy of this Notice of Removal
20  with the clerk of the Superior Court of California, County of Alameda; (b) serve a true and correct
21  copy of this Notice of Removal on all adverse parties; and (c) file with this Court a Certificate of
22  Service of Notice to Adverse Parties of Removal to Federal Court.

23      9.    The Continuum Defendants, through their counsel, have executed this Notice of
24  Removal subject to and without waiving any defenses and rights available to them. As reflected in
25  the letter from counsel for Akash Saraf and Infotech attached as Exhibit 3, Akash Saraf and
26  Infotech have consented to the removal of the Action.

27
28

CORRECTED NOTICE OF REMOVAL    2    Case No.

1

**GROUNDS FOR REMOVAL**

2      10.    The Defendants are entitled to remove this Action under 28 U.S.C. § 1441(a)

3   because this Court has original diversity subject matter jurisdiction over the Action pursuant to 28

4   U.S.C § 1332.

5      11.    Under 28 U.S.C. § 1332(a)(3), diversity jurisdiction exists where the dispute is

6   "between citizens of different States and in which citizens or subjects of a foreign state are

7   additional parties," and where the amount in controversy, exclusive of interest and costs, exceeds

8   $75,000.  28 U.S.C § 1332(a)(3).

9      Diversity of Citizenship

10     12.    The present action concerns a dispute "between citizens of different States and in

11  which citizens or subjects of a foreign state are additional parties," and, accordingly, there is

12  complete diversity among the parties.  28 U.S.C § 1332(a)(3).

13     13.    According to the Complaint, plaintiff DSSDR is "a Florida limited liability

14  corporation with its principle place of business located in Windermere, Florida, and Plaintiff

15  Andrew G. Bensinger is "a resident of the State of Florida."  *See* Complaint ¶¶ 1 & 3.

16     14.    As alleged in the Complaint, defendant Continuum is "a limited liability corporation

17  organized under the laws of the State of Delaware with it [*sic*] principal place of

18  business...in...Pennsylvania" and that defendant Summit is "a limited partnership organized under

19  the laws of the State of Delaware with it [*sic*] principal place of business in Boston,

20  Massachusetts."  Complaint ¶¶ 10 & 14.  Defendant Michael George is a resident of the State of

21  Massachusetts.

22     15.    The Complaint alleges that defendant Akash Saraf "is a citizen of the country of

23  India" and that defendant Infotech "is a foreign corporation duly organized under the laws of the

24  country of India with its principle place of business in Mumbai, India."  Complaint ¶¶ 5-6.

25     16.    Under 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious

26  names is disregarded, and only the citizenship of named defendants is evaluated for the purposes of

27  determining diversity jurisdiction.

28

1    17.    Based on the foregoing, this Court has diversity jurisdiction pursuant to 28 U.S.C. §

2    1332(a)(3).

3    <u>Amount in Controversy</u>

4    18.    The allegations in the Complaint demonstrate that the amount in controversy

5    exceeds $75,000, exclusive of costs and interest. *See* 28 U.S.C. § 1446(c)(2) ("If removal of a civil

6    action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in

7    good faith in the initial pleading shall be deemed to be the amount in controversy"); *see also*

8    *Martinez v. PRLAP, Inc.*, No. 2:12-cv-00345-MMD-RJJ, 2012 WL 2859933, at *2 (D. Nev. July

9    11, 2012) (denying motion to remand where it was "facially evident" from the complaint that the

10   amount in controversy exceeded $75,000) (*citing Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117

11   (9th Cir. 2004)).

12   19.    In the Complaint, Plaintiffs seek, with regard to the first, second, and third causes of

13   action, "[p]unitive and exemplary damages equal to at least three times the amount of

14   compensatory damages awarded herein, but not less than $1,000,000.00." Complaint at p. 26.

15   Further, with regard to each of the five counts of the fourth cause of action, Plaintiffs seek

16   "[c]ompensatory damages in an amount not less than $500,000.00." Complaint at pp. 26-27.

17   Finally, as to the fifth cause of action, Plaintiffs seek "[c]ompensatory damages in an amount not

18   less than $500,000.00" and "[p]unitive and exemplary damages equal to at least three times the

19   amount of compensatory damages awarded herein, but not less than $1,000,000.00."[1] Complaint

20   at p. 27.

21   20.    Accordingly, the amount in controversy exceeds $75,000 exclusive of interests and

22   costs.

23   21.    No admission of fact, law, liability or damages is intended by this Notice of

24   Removal, and all defenses, including but not limited to the defense of lack of personal jurisdiction,

25   affirmative defenses, objections and motions hereby are reserved.

26

27   [1] *Bell v. Preferred Life Assur. Soc'y of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both
28   actual and punitive damages are recoverable under a complaint each must be considered to the
     extent claimed in determining jurisdictional amount.").

CORRECTED NOTICE OF REMOVAL                4                              Case No.

1        22.    The Continuum Defendants reserve the right to submit additional evidence and

2    argument as needed to supplement and support this "short and plain statement of the grounds for

3    removal." 28 U.S.C. § 1446(a).

4        BASED ON THE FOREGOING, the Continuum Defendants hereby remove the Action

5    from the Superior Court of the State of California, for the County of Alameda, to the United States

6    District Court for the Northern District of California.

7

8    DATED:  August 16, 2012                                        Respectfully submitted,

9                                                      WEIL, GOTSHAL & MANAGES LLP

10

11

12                                        By:_____
                                             Christopher J. Cox

13                                      WEIL, GOTSHAL & MANGES LLP

14                                      201 Redwood Shores Parkway
                                   Redwood Shores, CA  94065

15                                      Telephone: (650) 802-3000
                                   Facsimile: (650) 802-3100

16

17                                      Attorneys for Defendant
                                   CONTINUUM MANAGED SERVICES,

18                                      LLC, MICHAEL GEORGE, and SUMMIT
                                   PARTNERS, L.P.

19

20

21

22

23

24

25

26

27

28

EXH·1

*10320033*

FILED
ALAMEDA COUNTY

2012 AUG -6 PM 2: 59

CLERK OF
BY
DEPUTY

1  PAUL J. STEINER (SBN 41117)
   LAW OFFICES OF PAUL J. STEINER
2  550 California Street, Suite 700, Sacramento Tower
   San Francisco, California 94104
3  Telephone: (415) 981-6100
   Facsimile: (415) 984-0950
4

5
   Attorneys for Plaintiffs
6  DSSDR, LLC and
   ANDREW G. BENSINGER
7

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                         (Unlimited Jurisdiction)

10
11 DSSDR, LLC, a Florida Corporation; and       Case No.  RG12642426
   ANDREW G. BENSINGER, an Individual,
12
13      Plaintiffs,                              COMPLAINT for:
                                                    Conspiracy to Commit Intentional Inter-
14 v.                                               ference with Prospective Economic
                                                    Advantage and Contractual Relations;
15 ZENITH INFOTECH LTD, an Indian                   Intentional Interference with Contractual
   Corporation; AKASH SARAF, an                     Relations;
16 Individual; CONTINUUM MANAGED                    Intentional Interference with Prospective
   SERVICES, LLC, a Delaware Corporation;           Economic Advantage:
17 fka ZENITH RMM; MICHAEL GEORGE,                  Breach of Contract;
   an Individual; SUMMIT PARTNERS, L.P.,            Declaratory Relief;
18 a Delaware Limited Partnership; and,             Imposition of a Constructive Trust;
   DOES 1 through 200, inclusive,                   Permanent Injunction;
19                                                  an Accounting; and,
20      Defendants.                                 Damages
21
22 _____/
23      Plaintiffs allege as follows:
24                      GENERAL ALLEGATIONS
25                          THE PARTIES
26
27      1.      At all times herein mentioned, plaintiff DSSDR, LLC (hereinafter "DSSDR") was
28 and currently is a Florida limited liability corporation with its principle place of business located

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                              1

1  in Windermere, Florida.

2      2.    At all times herein mentioned, DSSDR was and currently is in the business of

3  creating computer technical solutions including, but not limited to, computer data backup and

4
   disaster recovery and near-time high-availability systems technology that are designed for small
5
6  and medium businesses in all 50 states of the United States including California and in numerous

7  foreign countries.

8      3.    At all times herein mentioned, plaintiff ANDREW G. BENSINGER (hereinafter

9
   "BENSINGER") was and is currently a resident of the State of Florida.
10
11      4.    At all times herein mentioned, BENSINGER was and currently is the sole member,

12  officer and director of DSSDR and as such was and is:  directly and personally liable for any taxes

13  due to the IRS on any monies earned by DSSDR; and, was and is the party who will directly and

14
   personally suffer the loss of any income earned by DSSDR, as proximately caused by the acts and
15
16  activities of defendants, and each of them, as hereinafter alleged.

17      5.    DSSDR and BENSINGER (hereinafter, unless otherwise indicated, referred to

18  collectively as DSSDR) are informed, believe and thereon allege that at all times herein

19  mentioned, defendant AKASH SARAF (hereinafter "SARAF") was and currently is a citizen of

20
   the country of India, who has traveled widely in the United States, including California, to conduct
21
22  business on behalf of and for defendant ZENITH INFOTECH, LTD., (hereinafter "ZENITH

23  INFOTECH").

24      6.    DSSDR is informed, believes and thereon alleges that at all times herein

25  mentioned, ZENITH INFOTECH was and currently is a foreign corporation duly organized under

26
   the laws of the country of India with its principle place of business in Mumbai, India.
27

28

7.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, SARAF was and currently is the Managing Director and Chief Executive Officer of ZENITH INFOTECH and in doing the things hereinafter alleged was either acting personally on his own behalf and/or in his official capacity with ZENITH INFOTECH, as more specifically alleged herein.

8.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, ZENITH INFOTECH was and currently is in the business of providing and/or selling information technology solutions including, but not limited to, hardware and software for computer data backup and disaster recovery and near-time high-availability systems technology through value-added resellers (hereinafter "VARS") to small and medium sized businesses as well as other institutions and entities such as local government agencies, schools and financial institutions.

9.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, ZENITH INFOTECH sold its services and products, as described in paragraph 8, to VARS located in the State of California as well as in other states and also maintained business offices, equipment for servicing its products, employees, bank accounts and other regular business contacts in the State of California, particularly in the County of Alameda.

10.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, CONTINUUM MANAGED SERVICES, LLC, fka Zenith RMM, LLC (hereinafter 'CONTINUUM") was and currently is a limited liability corporation organized under the laws of the State of Delaware with it principle place of business originally in Williamsburg, Pennsylvania, and now located to Cranberry Township, Pennsylvania.

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                3

11.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, defendant MICHAEL GEORGE (hereinafter "GEORGE") was and currently is the Chief Executive Officer of defendant CONTINUUM, and in doing the things hereinafter alleged, was acting on his own behalf, or on his own behalf in the guise of his official capacity with CONTINUUM, and/or in his official capacity with CONTINUUM.

12.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned, CONTINUUM was and currently is in the business of providing and/or selling information technology solutions including, but not limited to, computer data backup and disaster recovery systems and near-time high-availability systems technology through VARS to small and medium sized businesses  as well as other institutions and entities such as local government agencies, schools and financial institutions.  DSSDR further alleges that at all times herein mentioned, CONTINUUM was and currently is a competitor of DSSDR.

13.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned CONTINUUM sold it services and products to VARS in the State of California as well as in other states and maintained and/or subcontracted employees and equipment for servicing its products in the State of California, particularly in the County of Alameda.

14.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned SUMMIT PARTNERS, L.P. (hereinafter "SUMMIT") was and currently is a limited partnership organized under the laws of the State of Delaware with it principle place of business in Boston, Massachusetts.

15.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned SUMMIT was and currently is in the business of growth equity and credit investing for rapidly growing companies.

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                    4

16.    DSSDR is ignorant of the true names and capacities of defendants sued herein as Does 1 through 200, inclusive, and therefore sue these defendants by such fictitious names. DSSDR prays leave to amend this complaint to allege said DOE defendants' true names and capacities when ascertained.

17.    DSSDR is informed, believes and thereon alleges that each of the fictitiously named defendants herein is responsible in some manner for the occurrences hereinafter alleged, and that plaintiffs' injuries and damages, as hereinafter alleged, were directly and proximately contributed to or caused by said DOE defendants.

18.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned Does 1 through 200, inclusive, were and are the agents and/or employees of at least one of the specifically named defendants herein, and they of each other, and in doing the things hereinafter alleged were acting within the course and scope of said agency and/or employment.

## FACTS UNDERLYING THE CAUSES OF ACTION HEREIN

19.    On or about August 15, 2009, DSSDR and ZENITH INFOTECH, by and through BENSINGER and SARAF, acting in their official capacities on behalf of said corporate defendants, respectively, entered into a written License Agreement formally known as the "2009 Appliance and Remote License Agreement (hereinafter "License Agreement"), in which DSSDR, as licensor, agreed, for adequate consideration, to license to ZENITH INFOTECH, as licensee, the exclusive, non-transferable (except with prior consent) rights in the agreed-upon license territory to use, market and copy "certain business methods, processes and know-how" more specifically referred to in the License Agreement as "Licensed Technology" (hereinafter "Licensed Technology") that had been developed by DSSDR. Said Licensed Technology included, but was not limited to:

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                    5

(a) know-how for a client-side data appliance that delivered easy backup and nearly instant server system recovery at multiple levels, from block snapshots of data; and

(b) know-how for remote data storage and data center operations that could be offered to consumers including, but not limited to, use of or access to data vault/storage pools, data restoration, virtual servers, application publishing servers, VPN direct access and fail back. (See Exhibit "A" to the License Agreement, a copy of which, including exhibits thereto, is marked **Exhibit "1"** and is attached hereto and made a part hereof.)

20.    In exchange for DSSDR's performance of its obligations under the License Agreement, ZENITH INFOTECH agreed to pay to DSSDR certain fees, including any late fees and interest, as set forth in Exhibit A to the License Agreement and in conformance with Paragraph 8, therein.

21.    In addition to the fees owed by ZENITH INFOTECH to DSSDR, as heretofore described in paragraph 20, ZENITH INFOTECH also agreed to pay DSSDR, pursuant to Paragraph 13.1 of the License Agreement, seven and one-half percent (7.5%) of the

"proceeds from the sale of the business and product/service line(s) associated with the Licensed Technology, with the determination of the proceeds and the value of the sale and Licensor's [i.e., ZENITH INFOTECH] 7.5% thereof to be determined mutually by the Parties. . . . Moreover, payment of 7.5% of the proceeds from a sale shall be made a condition to closing of any such permitted sale and distributed to Licensor [i.e., DSSDR] prior to or simultaneously with the closing of any sale or merger transaction involving Licensee [i.e., ZENITH INFOTECH]."

22.    In addition, the License Agreement also either explicitly or implicitly:

(a)    Prohibits unauthorized disclosure of confidential information, trade secrets and/or Licensed Technology by ZENITH INFOTECH or by any assignees, transferees, end users and/or VARS pursuant to paragraphs 1.1, 1.2, 2.1, 6.2 and 13.1 of the License Agreement;

(b)    Provides for DSSDR's voiding of any assignment or transfer of the License Agreement without DSSDR's prior written consent pursuant to Paragraph 13.1 of the License Agreement, except under limited circumstances not applicable herein; and,

(c)    The enjoining of the sale of ZENITH INFOTECH to any third-party acquirers pursuant to Paragraph 13.1 of the License Agreement for ZENITH INFOTECH's failure agree with DSSDR as to the value of the sale of ZENITH INFOTECH to a third-party acquirer in order to determine the 7.5% payment due DSSDR no later than the closing of said sail.

23.    Pursuant to Paragraph 13.11 of the License Agreement, "the validity, construction and performance of . . . [the License Agreement], and the legal relations among the Parties to . . . [the License Agreement], shall be governed by and construed in accordance with the laws of the State of Florida and the United States, excluding that body of law applicable to conflicts of law." Said 'choice of law' provision of the License Agreement does not apply to the First, Second, Third and Seventh Causes of Action as hereinafter alleged, and that said causes of action should be resolved pursuant to the laws of the State of California. In addition, the 'choice of law' provision may not apply to other causes of action, depending on the court's determination of the application of the law applicable to conflicts of law.

24.    DSSDR is informed, believes and thereon alleges that on some unknown date, but in or about August or September 2011, ZENITH INFOTECH and SUMMIT entered into an agreement in which SUMMIT agreed to purchase ZENITH INFOTECH's RMM product line and services (hereinafter "RMM") for the approximate sum of $55,000,000.00.

25.    Sometime during the negotiations for the purchase of RMM by SUMMIT, SARAF was informed that SUMMIT intended to 'pass' RMM onto another business, such as CONTINUUM, for development and growth purposes and coincidental with its purchase of RMM,

SUMMIT caused CONTINUUM to be incorporated in the State of Delaware for the primary purpose of taking control of RMM from SUMMIT.

26.    Thereafter, following SUMMIT's acquisition of RMM and upon the concomitant availability of CONTINUUM as a duly organized business entity, SUMMIT transferred, assigned, sold or otherwise divested itself of direct control and/or ownership of RMM to CONTINUUM.

27.    DSSDR does not presently have sufficient information as to the exact nature of the business relationship between SUMMIT and CONTINUUM from the date CONTINUUM was incorporated until the present.    Therefore, DSSDR prays leave to amend this complaint to allege said information when it is obtained.    However, DSSDR is informed, believes and thereon alleges that at all times herein mentioned, two employees, agents or representatives of SUMMIT were and currently are on the Board of Directors for CONTINUUM.

28.    DSSDR is informed, believes and thereon alleges that in addition to the purchase price of approximately $55,000,000.00 for RMM, SUMMIT and/or CONTINUUM offered SARAF, personally, as additional consideration for the purchase of RMM, a position as a member of the Board of Directors of CONTINUUM, which SARAF accepted, as well as a personal 15% ownership interest in CONTINUUM, which SARAF also accepted.

29.    DSSDR is further informed, believes and thereon alleges that approximately $48,000,000.00 of the approximate $55,000,000 purchase price for RMM was paid to ZENITH INFOTECH and/or SARAF as partial payment on the purchase and approximately $6,900,000.00 was placed in an escrow account by SUMMIT and/or CONTINUUM to cover, in part, any claims made by third parties to a portion of the sale proceeds and to cover other known and unknown contingencies.

30.     The acquisition of RMM by SUMMIT and/or CONTINUUM constituted a sale of ZENITH INFOTECH to SUMMIT and/or CONTINUUM pursuant to Paragraph 13.1 of the License Agreement because, as DSSDR is informed, believes and thereon alleges, RMM represented substantially all of the assets of ZENITH INFOTECH pursuant to 13.1 of the License Agreement.

31.     The acquisition of RMM by SUMMIT and/or CONTINUUM also created an assignment of the License Agreement or License Technology in breach of Paragraph 13.1 of the License Agreement because, as DSSDR is informed, believes and thereon alleges, the sale of RMM to SUMMIT and/or CONTINUUM permitted access to License Technology by SUMMIT and/or CONTINUUM and their agents and employees.

32.     DSSDR is informed, believes and thereon alleges that at the time ZENITH INFOTECH sold RMM to SUMMIT and/or CONTINUUM, that SUMMIT and/or CONTINUUM were aware of DSSDR's right to declare void any transfer or assignment of the License Agreement by ZENITH INFOTECH for failure by ZENITH INFOTECH to obtain required written consent by DSSDR of any assignment or transfer of the License Agreement and to enjoin, as hereinafter alleged, any sale of ZENITH INFOTECH if any assignees, transferees and/or third-party acquirers of ZENITH INFOTECH fail to comply with the restrictions and requirements of the License Agreement as set forth in Paragraph 13.1.

## FIRST CAUSE OF ACTION

### (Conspiracies to Commit Intentional Interference With Contractual Relations and Prospective Economic Advantage)

33.     DSSDR re-alleges herein, as though set forth in full, paragraphs 1 through 32, inclusive, of the General Allegations.

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                          9

34.    DSSDR is informed, believes and thereon alleges that SARAF claims that neither he nor ZENITH INFOTECH transferred, assigned or otherwise hypothecated the License Agreement between DSSDR and ZENITH INFOTECH, or any portion thereof, as part of the sale of RMM to SUMMIT and/or to CONTINUUM.

35.    DSSDR is further informed, believes and thereon alleges that SARAF claims that SUMMIT and/or CONTINUUM were never granted access by either SARAF or any other employee, agent or representative of ZENITH INFOTECH to any of DSSDR's Licensed Technology.

36.    However, DSSDR is informed, believes and thereon alleges that at all times herein mentioned, SARAF knew that the sale of RMM included ZENITH INFOTECH's customer list of VARS for RMM, which in turn permitted access by SUMMIT and/or CONTINUUM to the names and/or databases that identified value-added resellers (VARS) of other products and services owned by ZENITH INFOTECH that utilized DSSDR's Licensed Technology, such as Zenith BDR and ARCA.

37.    DSSDR is informed, believes and thereon alleges that all times herein mentioned, GEORGE knew, as a result of obtaining said information from SARAF, that the acquisition of the customer list for RMM by SUMMIT and/or CONTINUUM would, in fact, allow SUMMIT and/or CONTINUUM access to the information identifying ZENITH INFOTECH's VARS, who also sell other products and services such as Zenith BDR and ARCA, which utilize DSSDR's License Technology.

38.    DSSDR is also informed, believes and thereon alleges that at some time prior to the sale of RMM, that SUMMIT, CONTINUUM and/or GEORGE had been informed by SARAF of the License Agreement between DSSDR and ZENITH INFOTECH that provided, *inter alia*, that

COMPLAINT
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                                    10

1    DSSDR receive fees from ZENITH INFOTECH calculated on ZENITH INFOTECH's sales of

2    products to VARS that utilized DSSDR's Licensed Technology, such as Zenith BDR and ARCA.

3        39.    DSSDR is informed, believes and thereon alleges that at all times herein mentioned,

4    SUMMIT, CONTINUUM and/or GEORGE similarly also knew that it was a standard and

5

6    repeating event for many of ZENITH INFOTECH's VARS to renew their contractual relationship

7    with ZENITH INFOTECH at the conclusion or expiration of any given contractual period and that

8    DSSDR would derive income in the form of fees from those contract renewals for products and

9

10   services provided by ZENITH INFOTECH to its VARS that utilized DSSDR's License

11   Technology.

12       40.    DSSDR is informed, believes and thereon alleges that all times herein mentioned,

13   SARAF, acting on his own behalf, and GEORGE, acting on his own behalf and/or within the

14

15   course and scope of his official capacity as set forth above in paragraph 18, agreed, either tacitly or

16   explicitly, to interfere with DSSDR's contractual relations with ZENITH INFOTECH and with

17   DSSDR's prospective economic advantages existing as a result of these prior contractual relations

18   by *inter alia* inducing ZENITH INFOTECH's VARS to:

19           (a) cancel their ongoing contracts with ZENITH INFOTECH by offering said pre-

20   existing customers credits towards their prior purchases of systems and appliances from ZENITH

21

22   INFOTECH if said customers purchased similar products and services provided by

23   CONTINUUM; and,

24           (b) not to renew their contracts with ZENITH INFOTECH for the products and

25   services provided by ZENITH INFOTECH upon expiration of their present contracts, thereby

26

27   reducing or extinguishing fees paid to DSSDR by ZENITH INFOTECH pursuant to the License

28   Agreement.

---

**COMPLAINT**
DSSDR, LLC et al. v. Zenith Infotech, Ltd., et al.                                           11