## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| _____ | ) | | |
| DSSDR, LLC and ANDREW G. BENSINGER, | ) ) ) | | |
| Plaintiffs, | ) ) | Civil No. 13-10026-FDS | |
| v. | ) ) | | |
| ZENITH INFOTECH, LTD. and AKASH SARAF, | ) ) ) | | |
| Defendants. | ) ) ) | | |
| _____) | | | |

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**SAYLOR, J.**

This is a contract dispute.  Plaintiff DSSDR, LLC and defendant Zenith Infotech, Ltd. entered into a licensing agreement in 2009.  The agreement granted Zenith the exclusive, nontransferable use of certain technology developed by DSSDR.  Plaintiff Andrew Bensinger is DSSDR's sole member, officer, and director.  Defendant Saraf is Zenith's chief executive officer and managing director.  In 2011, Zenith sold one of its product lines to a third-party company. Plaintiffs contend that the sale resulted in injury to their financial interests, and have brought suit for tortious interference with contractual relations and prospective economic advantage, breach of contract, and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Jurisdiction is based on diversity of citizenship.

Defendants have moved to dismiss (1) the tortious interference and FDUTPA claims

against all defendants, (2) all claims by Bensinger, and (3) all claims against Saraf. For the following reasons, the motion will be granted in part and denied in part.

## I.   Background

### A.   Factual Background

The facts are set forth as described in plaintiffs' second amended complaint.

DSSDR, LLC is a Florida limited liability company. It is in the business of creating computer technical solutions, including computer data backup, disaster recovery, and other near-time, high-availability technology systems. Andrew Bensinger, a resident of Florida, is the sole member, officer, and director of DSSDR.

Zenith Infotech, Ltd. is a foreign corporation with a principal place of business in Mumbai, India. It provides or sells information technology systems to various businesses, institutions, and agencies through other companies called value-added resellers. Value-added resellers take commercial information technology systems and adapt, change, customize, or otherwise alter them for sale to specific customers. Akash Saraf, a citizen of India, is the chief executive officer and managing director of Zenith.

Continuum Managed Services, LLC, is a Delaware limited liability company with a place of business in Boston, Massachusetts. Summit Partners, L.P. is a Delaware limited partnership with a principal place of business in Boston.

On August 15, 2009, DSSDR and Zenith entered into a written licensing agreement titled the "2009 Appliance and Remote License Agreement." In the License Agreement, DSSDR licensed to Zenith the rights to use, market, and copy certain technology it had developed. That technology included know-how for a client-side backup application that allowed nearly instant

server system recovery, and know-how for certain remote data storage and data center operations systems.

Zenith agreed to pay DSSDR a percentage of the fees for its sale of products and services utilizing DSSDR's technology.  The parties also agreed as follows:

> In the event of any merger or sale of all or substantially all of Licensee's [that is, Zenith's] stock or assets or all or substantially all of the assets within Licensee's business as it relates to the Licensed Technology or other act constituting the same (as defined above), Licensee agrees to share, pay, and distribute to Licensor [that is, DSSDR] Seven and One-Half Percent (7.5%) of the proceeds from the sale of the business and product/service line(s) associated with the Licensed Technology, with the determination of the proceeds and the value of the sale and Licensor's 7.5% thereof to be determined mutually by the Parties.  Licensee shall not be permitted to assign this Agreement if the parties fail to reach mutual agreement on the determination of the proceeds and value of the sale.  Moreover, payment of 7.5% of the proceeds from a sale shall be made a condition to closing of any such permitted sale and distributed to Licensor prior to or simultaneously with the closing of any sale or merger transaction involving Licensee.

(Licensing Agreement, ¶ 13.1(a)).  Under the agreement, DSSDR had the right to enjoin the sale of Zenith to any third-party acquirer if the parties failed to agree on the 7.5 percent payment. The Licensing Agreement also prohibited the unauthorized disclosure of confidential information, trade secrets, or licensed technology by Zenith and any of its assignees, transferees, end users, or resellers.

In August or September 2011, Summit agreed to purchase one of Zenith's product lines, called "RMM," for about $55 million.   During the negotiations, Summit informed Saraf that it intended to incorporate a new company, Continuum, and transfer the RMM product line to Continuum for development and growth purposes.  In addition to the $55 million purchase price, Summit and Continuum offered Saraf a position on Continuum's board of directors and a 15 percent ownership interest in the company, which Saraf accepted.

As part of the sale of the RMM product line to Summit and Continuum, those companies gained access to the list of resellers using DSSDR's technology.  Many of those resellers had a general practice of renewing their contracts with Zenith after those contracts expired.  DSSDR, under the Licensing Agreement, would receive fees from Zenith's profits under those contracts. Following the sale of the RMM line to Summit and Continuum, many resellers cancelled or decided not to renew their contracts with Zenith.

### C.     Procedural Background

Plaintiffs filed this action on August 6, 2012, in Superior Court in California.  The complaint initially named Zenith, Saraf, Continuum, Summit, and Michael George, the chief executive officer of Continuum, as defendants.  Defendants removed the case to the United States District Court for the Northern District of California.

On January 3, 2013, the case was transferred to this Court.  Plaintiffs filed a second amended complaint on August 5, 2013, dropping their claims against Continuum, Summit, and George.  The second amended complaint contends that defendants (1) interfered with plaintiffs' contractual relations and prospective economic advantage by causing the cancellation or non-renewal of Zenith's contracts with various resellers, (2) breached the contract between DSSDR and Zenith by selling the RMM line without paying DSSDR its 7.5 percent fee, and (3) violated Florida's Deceptive and Unfair Trade Practices Act.  The complaint also asked for declaratory and injunctive relief.

The remaining defendants moved to dismiss on August 19, 2013.  In their motion, they contend that (1) plaintiff Bensinger's claims should be dismissed, (2) both plaintiffs' claims against Saraf should be dismissed, (3) both plaintiffs' claims for intentional interference with

contractual relations and prospective economic advantage should be dismissed, and (4) both plaintiffs' claims for violations of FDUTPA should be dismissed.

## II.     Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

The Licensing Agreement plainly states, and the parties do not appear to contest, that "[t]he validity, construction, and performance of this Agreement . . . shall be governed by and construed in accordance with the laws of the State of Florida and the United States, excluding that body of law applicable to conflicts of law."  Therefore, the Court will apply Florida law to the disputed claims.

## III.     Intentional Interference

Defendants have moved to dismiss the claims of intentional interference.  In substance,

plaintiffs contend that defendants interfered with their contractual relations and prospective economic advantage by causing resellers to cancel their contracts with Zenith.  Plaintiff's claims constitute two distinct torts:  interference with contractual relations and interference with business relations (namely, plaintiff's prospective economic advantage from its relationship with Zenith and the resellers).  *See Walters v. Blankenship*, 931 So.2d 137, 139 (Fla. Dist. Ct. App. 2006) (evaluating interference with prospective economic advantage claim as an interference with business relations claim).

Under Florida law,

[i]n other to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by influencing, inducing, or coercing one of the parties to breach the contract, thereby causing injury to the other party.

*Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1228 (Fla. Dist. Ct. App. 2005) (quoting *Abruzzo v. Haller*, 603 So. 2d 1338, 1339-40 (Fla. Dist. Ct. App. 1992)). "An essential element for the establishment of a tortious interference with a contractual relationship is the existence of a contract." *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. Dist. Ct. App. 1992).  "The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contractive party is induced to breach the contract to the injury of the other." *Id.*

The elements for tortious interference with business relations are slightly different.  In Florida,

[t]o recover on a claim based on tortious interference with a business relationship, a plaintiff must establish (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, (2) knowledge of the relationship on the part of the

defendant, (3) an intentional and unjustified interference with the relationship by the
defendant, and (4) damage to the plaintiffs as a result of the breach of the relationship.

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985).  While a protected

business relationship need not be evidenced by an enforceable contract, it "must afford the

plaintiff existing or prospective legal or contractual rights."  *Register v. Pierce*, 530 So.2d 990,

993 (Fla. Dist. Ct. App. 1988).

The complaint does not state a claim on either theory regarding Zenith's contracts with

its resellers.  The complaint alleges that plaintiffs had contractual and business relationships with

Zenith's reseller customers through the Licensing Agreement.  However, the resellers only had

relations with Zenith, and indeed did not apparently have any direct contact with plaintiffs.  The

reseller contracts did not afford DSSDR any prospective legal or contractual rights independent

of its contract with Zenith.  The resellers themselves had no relation at all with DSSDR or

Bensinger other than through Zenith.  Therefore, the complaint fails to allege the existence of a

contract or business relationship between DSSDR and Zenith's resellers.

The complaint does, however, allege the existence of a contract and business relationship

between DSSDR and Zenith and interference with those relationships.  The analytical focus,

then, is on whether the complaint adequately alleges malicious or unjustified interference by a

third party with the contract or business relationship between DSSDR and Zenith.

### A.    Claims against Zenith for Tortious Interference

"Under Florida law, a cause of action for tortious interference does not exist against one

who is himself a party to the contract allegedly interfered with."  *United of Omaha Life Ins. Co.

v. Nob Hill Associates*, 450 So. 2d 536, 539 (Fla. Dist. Ct. App. 1984).  Likewise, "[a] cause of

action for wrongful interference with a business relationship is recognized only when the

interference is by one who is not a party to that relationship." *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So.2d 1025, 1028 (Fla. Dist. Ct. App. 1981). Thus, "[f]or the interference to be unjustified, the defendant must be a third party, external to the business relationship." *O.E. Smith's Sons, Inc. v. George*, 545 So. 2d 298, 299 (Fla. Dist. Ct. App. 1989). Because Zenith is a party to its own contract and business relationship with DSSDR, it cannot ordinarily be held liable for tortious interference with those relationships.

Plaintiffs contend, however, that Zenith lost the privilege to interfere with its own contract. Such a privilege is lost "when the defendant 'acts solely with ulterior purposes and the advice to terminate is not in the principal's best interest.'" *Id.* (quoting *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. Dist. Ct. App. 1987)). That exception, however, only applies to situations where the party interfering with the contract or business relationship is an agent or employee of the party to the contract or business relationship. *See Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. Dist. Ct. App. 1987) (describing exception as "where an individual acts without an honest belief that his action will benefit his employer"). Because Zenith is the principal to its relationships with DSSDR, it cannot be held liable for tortious interference. The tortious interference claims against Zenith will therefore be dismissed.

**B.      Claims against Saraf for Tortious Interference**

In Florida, the privilege to interfere with a contract relationship "enjoyed by an officer or employee of a contracting party . . . is destroyed where an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla.

Dist. Ct. App. 1999); *see also Sloan*, 505 So. 2d at 528.  Similarly, "the privileged interference

enjoyed by a party that is integral to the business relationship is not absolute.  The privilege is

divested when the defendant acts solely with ulterior purposes and the advice to terminate is not

in the principal's best interest."  *Alexis v. Ventura*, 66 So.3d 986, 988 (Fla. Dist. Ct. App. 2011)

(quoting *O.E. Smith's Sons*, 545 So.2d at 299).  "[A]n allegation that the defendant was not

acting on the employer's behalf or was acting to its detriment satisfies the 'third party'

requirement."  *Id.*

Saraf is an employee of Zenith.  The complaint alleges that Saraf caused Zenith to sell its

RMM product line to Summit and Continuum.  Because of this sale, many reseller customers of

Zenith's cancelled or failed to renew their contracts, interfering with the income DSSDR derived

from its Licensing Agreement with Zenith.  Saraf also personally benefitted from the sale of

Zenith's RMM line, gaining a seat on Continuum's board of directors and a 15 percent

ownership interest in the company.  Those allegations, together with any reasonable inferences

drawn from them, if proved, could support the conclusion that Saraf acted against Zenith's

interests in securing benefits for himself through the sale of the RMM product line.  Therefore,

the count for tortious interference with contractual relations and prospective economic advantage

against Saraf will not be dismissed for failure to state a claim.

## IV.   **Claims by Bensinger**

Defendants contend that Bensinger cannot sue for breach of contract because he is not a

primary or intended third-party beneficiary of the contract between DSSDR and Zenith.  They

further contend that the Licensing Agreement expressly provides that Bensinger is not an

intended beneficiary.  In addition, defendants contend Bensinger is so far removed from the

contracts between Zenith and its resellers that he cannot sue for interference with those contracts.

A.    **Bensinger's Contractual Rights**

In Florida, an incidental beneficiary cannot sue for breach of contract.  *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985).  However, "a third party beneficiary who is not a formal party to a contract may sue for damages sustained as the result of the acts of one of the parties to the contract."  *Thompson v. Commercial Union Ins. Co. of New York*, 250 So. 2d 259, 261 (Fla. 1971).  "A party is a third-party beneficiary of a contract only if both parties to the contract express an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong."  *Land & Sea Petroleum, Inc. v. Business Specialists, Inc.*, 53 So. 3d 348, 355 (Fla. Dist. Ct. App. 2011).

"The intention of the contracting parties, gleaned from the contract itself, is determinative.  It is not enough that the services ultimately rendered accrue to the third party." *Networkip, LLC v. Spread Enterprises, Inc.*, 922 So. 2d 255, 358 (Fla. Dist. Ct. App. 2006) (internal quotation omitted).[1]  Bensinger is not a party to the License Agreement between DSSDR and Zenith.  Indeed, his name is only mentioned once in the contract, where he signs on behalf of DSSDR.[2]  The agreement clearly shows that DSSDR is the party to the agreement and Bensinger is merely its "duly authorized representative."  (Licensing Agreement ¶ 13.13). Although Bensinger indirectly receives income from the agreement, that only makes him an

---

[1] "A clear, complete, and unambiguous contract does not require judicial construction.  In interpreting a contract, courts are not to isolate a single term or group of words and read that part in isolation; the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose." *Horizons A Far, LLC v. Plaza N 15, LLC*, 114 So. 3d 992, 994 (Fla. Dist. Ct. App. 2012).

[2] Above the signatures, the agreement reads:  "Wherefore, the Parties hereto, by their duly authorized representatives, have executed this Agreement effective on the Effective Date intending to be legally bound." (Licensing Agreement ¶ 13.13).

incidental beneficiary to the contract.

Plaintiffs contend, however, that because Bensinger is the sole member, officer, and director of DSSDR, he is therefore a third-party beneficiary to the contract. Essentially, plaintiffs contend that since DSSDR is Bensinger's alter ego, he can now pierce his own company's corporate veil, making him a party or a third-party beneficiary to the contract.

The Court finds no authority for such a claim of reverse veil-piercing.[3] Having created an LLC, presumably for valid business reasons, Bensinger cannot now disregard its existence simply because it suits his purposes. Nor can he sue individually for harm to the LLC, even if he is the sole member of the company. While he might be able to assert a derivative claim under some circumstances, no such claim has been asserted. Moreover, under Florida law, "[a] complaint in a proceeding brought in the right of a limited liability company must be verified and allege with particularity the demand made to obtain action by the managing members of a member-managed company . . . and that the demand was refused or ignored." Fla. Stat. § 808.601. Bensinger does not and cannot claim that DSSDR has failed to act in this case.

Finally, the agreement itself contains a "no third-party beneficiaries clause." That clause reads: "No Third-Party Beneficiaries. This Agreement is not intended to confer any benefit on any person or entity not a party hereto." (License Agreement ¶ 13.2). Plaintiffs point out that the "p" in "party" in that paragraph is not capitalized, but is capitalized when referring specifically to DSSDR and Zenith elsewhere in the agreement. They contend, therefore, that

---

[3] In fact, "[t]he law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil." *Gasparini v. Prodomingo*, 972 So. 1053, 1055 (Fla. Dist. Ct. App. 2008). In Florida, courts apply the corporate veil-piercing standard to cases where a party is seeking to hold members of a limited liability company personally responsible for liabilities of the company. Fla. Stat. § 608.701; *see, e.g., XL Vision, LLC v. Holloway*, 856 So. 2d 1063, 1066 (Fla. Dist. Ct. App. 2003) (applying corporate veil-piercing standard to liability of member of a limited liability company).

paragraph 13.2 is not meant to exclude Bensinger and Saraf as signatories to the agreement.

That argument belies the plain text of the agreement. The only parties to the contract are DSSDR and Zenith. Bensinger and Saraf only signed the agreement in their capacities as representatives of the two companies. The "No Third-Party Beneficiaries" clause lawfully excludes anyone besides DSSDR and Zenith from suing under the contract. *See, e.g.*, *Venezia Lakes Homeowners Ass'n, Inc. v. CSX Transp., Inc.*, 43 So. 3d 93, 95 (Fla. Dist. Ct. App. 2010) (upholding no third-party beneficiary clause against breach of contract suit); *Networkip*, 992 So. 2d at 359 (clear wording of no third-party beneficiary clause upheld).

Bensinger's claim for breach of contract is therefore without a basis under Florida law and will be dismissed.

### B.      Claims by Bensinger for Tortious Interference

Defendants have also moved to dismiss Bensinger's claims of tortious interference. Because Bensinger is not a party to or a third-party beneficiary of the License Agreement, he has no contract or business relationship with Zenith or with the resellers who canceled their contracts. *See  Metropolitan Life Ins. Co.*, 467 So. 2d at 279. Accordingly, Bensinger's claims of tortious interference will also be dismissed.

### VI.    Claims against Saraf for Breach of Contract

Defendants also move for dismissal of the breach of contract claim against Saraf. Like Bensinger, Saraf is not a party to the contract. He only signed the contract in his capacity as a representative of Zenith. Therefore, plaintiffs normally could not sue Saraf in his individual capacity for breach of contract because a contract generally cannot bind a nonparty. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). However, plaintiffs contend they

should be able to pierce Zenith's corporate veil and sue Saraf individually because he so dominated Zenith that the company was his alter ego.  Plaintiffs further contend he used Zenith to barter a deal for himself in the sale of Zenith's RMM product line.

In Florida, piercing the corporate veil requires proof of three factors:  (1) that the shareholder dominated and controlled the corporation to such an extent that the shareholder was an alter ego of the corporation; (2) that the shareholder used the corporate form fraudulently or for an improper purpose; and (3) that the fraudulent or improper use of the corporate form caused injury to the plaintiff.  *Gasparini v. Prodomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008).  To show improper use, it must be "shown that the corporation was organized or used to mislead creditors or to perpetuate a fraud upon them."  *McFadden Ford, Inc. v. Mancuso ex rel. Mancuso*, 766 So. 2d 241, 242 (Fla. Dist. Ct. App. 2000).

Plaintiffs argue that the complaint properly alleges that Saraf could have dominated Zenith that he treated it as his alter-ego.  However, "[c]ausing a corporation to intentionally breach a contract or commit conversion, without more, does not mislead or defraud creditors such that the corporate veil should be pierced."  *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F. Supp. 2d 1299, 1308 (M.D. Fla. 2009) (interpreting Florida law). Plaintiffs have only alleged that Saraf and Zenith sold the RMM product line, which caused damage to them through breach of contract.  There are no allegations that Saraf misused Zenith's corporate form to mislead or defraud creditors.  Without such allegations, Saraf cannot be held personally liable even if he caused Zenith to breach its contract with DSSDR.  Plaintiffs' claims of breach of contract against Saraf will therefore be dismissed.

## V.      FDUTPA Violations

Florida's Deceptive and Unfair Trade Practices Act states as follows:  "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. § 501.204(1).  A person who has suffered loss from a FDUTPA violation can sue for damages.  *Id.* § 501.211(2); *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So.2d 992, 993 (Fla. Dist. Ct. App. 2004).  In order to establish a cause of action for damages under FDUTPA, plaintiff must sufficiently allege (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.  *PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).  "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. Dist. Ct. App. 2001)).  "Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the in the circumstances, to the consumer's detriment."  *North American Clearing*, 666 F. Supp. 2d at 1311 (citing *PNR*, 842 So. 2d at 777).

The complaint alleges that defendants violated FDUTPA by (1) refusing to pay fees due to DSSDR under the License Agreement, (2) making misrepresentations regarding data about such fees, and (3) failing to maintain its confidentiality obligations under the License Agreement.  These allegations are insufficient to meet plaintiffs' burden.

First, plaintiffs' allegation of misrepresentation runs afoul of the Rule 9(b) requirement that fraud or misrepresentation be pleaded with specificity.  Fed. R. Civ. P. 9(b).  "It is well-established that 'this rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations.'" *Epstein v. C.R. Bard, Inc.*, 460 F.3d

14

183, 190-91 (1st Cir. 2006) (quoting *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir.

1991)).  The complaint does not allege the time, place, or contents of defendants' alleged

misrepresentations, and thus plaintiffs have failed to satisfy the Rule 9(b) standard.

Second, defendants' alleged failures to pay fees and maintain confidentiality obligations

under the License Agreement, without more, do not constitute unfair practices.  Florida law does

not prohibit a plaintiff from pursuing a separate FDUTPA claim related to a defendant's alleged

breach of contract, as long as the act giving rise to the breach also constitutes an alleged unfair or

deceptive trade practice.  *Rebman v. Follett Higher Educ. Group, Inc.*, 575 F. Supp. 2d 1272,

1279 (M.D. Fla. 2008).  In this case, however, plaintiffs have not alleged that any of defendants'

underlying practices are unfair or deceptive.  Instead, they only contend that defendants' breach

of the License Agreement through their refusal to pay fees and failure to maintain confidentiality

is unfair and deceptive.  These claims are merely a recital of some of the ways defendants

allegedly violated the License Agreement, and thus cannot be converted to a claim under

FDUTPA.  *See id.* (dismissing FDUTPA claim where plaintiffs challenged defendant's pricing

of textbooks because it violated a contract but did not allege defendant's pricing practices

themselves were unfair or deceptive); *PNR*, 842 So. 2d at 777 n.2 ("[T]his opinion does not

operate to convert every breach of contract or breach of lease case into a claim under the Act.

Indeed, such a construction would be precluded by the FDUTPA, which only reaches conduct

that is unfair or deceptive as judged by controlling case law.").

Accordingly, the claims under the FDUTPA will be dismissed.

**VI.**     **Conclusion**

For the foregoing reasons, defendants' partial motion to dismiss is

1.      GRANTED as to plaintiff Andrew Bensinger's claims on all counts;

2.      GRANTED in part as to Count 1 (tortious interference) of the complaint against

defendant Zenith Infotech;

3.      GRANTED in part as to Count 2 (breach of contract) of the complaint against

defendant Akash Saraf;

4.      GRANTED as to Count 3 (FDUTPA) of the complaint against all defendants; and

5.      DENIED in all other respects.

**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: October 18, 2013                    United States District Judge