UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DSSDR, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. |
| v. ) | 13-10026-FDS |
| ) | |
| ZENITH INFOTECH, LTD. and AKASH ) | |
| SARAF, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER ON PLAINTIFF'S
# MOTION FOR FINAL JUDGMENT

**SAYLOR, J.**

This is a contract dispute. Plaintiff DSSDR, LLC and defendant Zenith Infotech, Ltd. entered into a licensing agreement in 2009. The agreement granted defendant the use of certain technology developed by plaintiff. The complaint originally alleged tortious interference with contractual relations and prospective economic advantage, breach of contract, and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against defendant and its chief executive officer, Akash Saraf. The claim for breach of contract against defendant remains.[1]

On October 7, 2013, plaintiff filed a motion for partial summary judgment, contending it was entitled to summary judgment in its favor on the breach-of-contract claim. On December 9, the Court granted summary judgment in plaintiff's favor as to liability on the breach-of-contract

---

[1] On October 18, 2013, the Court dismissed several of the claims in the complaint, including the breach-of-contract claim against Saraf. On March 14, 2014, plaintiff filed a stipulation dismissing all claims but its breach-of-contract claim against defendant. Although the stipulation of dismissal did not dismiss claims against Saraf "in his capacity as an officer, director and/or employee, agent or servant" of defendant, (Docket No. 152), there are no claims of that nature remaining.

claim but denied it without prejudice as to damages. On March 19, 2014, plaintiff filed a motion for summary judgment as to its breach-of-contract damages.[2] On April 3, 2014, defendant cross-moved for partial summary judgment, contending that it is entitled to attorneys' fees.

For the following reasons, plaintiff's motion for summary judgment will be granted in part and denied in part. Defendant's cross-motion for summary judgment will be denied.

## I.  Background

### A.  Factual Background

The facts summarized below are undisputed.

On August 15, 2009, DSSDR, LLC and Zenith Infotech, Ltd. entered into a written licensing agreement entitled the "2009 Appliance and Remote License Agreement." (License Agreement, Docket No. 131, Ex. 2 at *1). In the License Agreement, DSSDR licensed to Zenith the rights to use, market, and copy certain technology it had developed. (License Agreement ¶ 2.1). That technology included know-how for a client-side backup application that allowed nearly instant server system recovery, and know-how for certain remote data storage and data center operations systems. (License Agreement, Ex. A at *9-10).

In return, Zenith agreed to pay DSSDR 7% or 7.5% of the revenues from its use, sale, or lease of DSSDR's technology, depending on whether the technology was used as part of a "Licensed Appliance Product" or an "Off-Site Storage service" as defined by the agreement. (Licensing Agreement ¶¶ 8.1, 8.3, Ex. A at *11). The parties also agreed that:

> All past-due payments will incur a late fee of twenty percent (20%) as well as accrue interest at a rate of 1.5% per month or the highest rate permissible by law, whichever is less, on the unpaid balance from the due date until paid in full.

---

[2] DSSDR's motion is brought under Fed. R. Civ. P. 56. It will therefore be construed as a motion for summary judgment, notwithstanding the caption titling it a motion for "final judgment."

> Licensee shall reimburse Licensor for all reasonable costs incurred (including reasonable attorney's fees) in collecting past-due amounts.

(License Agreement ¶ 8.3). Finally, the parties agreed that if Zenith merged with another company or sold substantially all of its assets, it would pay DSSDR 7.5% of the proceeds from the sale of the product lines associated with DSSDR's licensed technology. (*Id.* ¶ 13.1(a)).

Since August 2012, Zenith has used the technology DSSDR licensed to it under the agreement, but has not paid any fees. (Bensinger Aff., Docket No. 131, Ex. 5 ¶ 9).

### B. Procedural Background

This action was filed on August 6, 2012, in Superior Court in California. It was removed and then transferred to this Court on January 3, 2013. A second amended complaint was filed on August 5, alleging that defendant (1) interfered with plaintiffs' contractual relations and prospective economic advantage, (2) breached the contract between the parties, and (3) violated Florida's Deceptive and Unfair Trade Practices Act.

On October 18 the Court issued an order dismissing several of the claims. On October 7, prior to the Court's order, plaintiff moved for partial summary judgment on its breach-of-contract claim against defendant. On December 9, the Court granted summary judgment in plaintiff's favor as to the breach-of-contract claim, but denied it without prejudice as to the damages of that claim.

On March 14, 2014, plaintiff stipulated to the dismissal of all of its remaining claims except for its breach-of-contract claim. On March 19, plaintiff moved for summary judgment on its breach-of-contract damages against defendant, contending that it is owed (1) actual damages of $1,039,904.99; (2) pre-judgment interest at the rate of 1.5% per month, for a total of $162,379.14; (3) late fees of 20%, for a total of $207,981.00; and (4) reasonable costs and

attorneys' fees.

On April 3, defendant cross-moved for partial summary judgment, contending that it is entitled to recovery of its attorneys' fees under the licensing agreement because it was the prevailing party on the significant issues in the litigation.[3]

### C.   DSSDR's Documentary Evidence of Damages

DSSDR has provided supporting documentation for the damages it suffered due to Zenith's breach of contract. The first is a document from Zenith that shows that it owed DSSDR licensing fees of $737,830.40 between July 2012 and June 2013. (Docket No. 131, Ex. 6; Saraf Dep., Docket No. 153, Ex. A at 89-91). The second is a set of Excel spreadsheets created by DSSDR that shows that Zenith owes DSSR licensing fees of $1,039,904.99 from unpaid fees from the period between July 2012 and January 2014. (Docket No. 153, Exs. B1-B4, C). The Excel spreadsheets are based on invoices from Zenith's general ledger and a Zenith invoice code sheet that shows whether Zenith owed 7% or 7.5% of the revenues from each invoice to DSSDR. (Saraf Dep. at 183-84, 186-88).

## II.   Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

---

[3] Defendant also contends that it is entitled to summary judgment on the breach-of-contract claim against Saraf. Plaintiff's stipulation of dismissal stated that plaintiff did not stipulate to dismissal of claims against Saraf "in his capacity as an officer, director and/or employee, agent or servant" of defendant. (Docket No. 152). Generally, claims against an individual in his or capacity as an officer of a corporation are assertions of vicarious liability. *See, e.g.*, *Meyer v. Holley*, 537 U.S. 283-84 (2003). Because the Court has found that Saraf is not vicariously liable for his actions as officer of Zenith, no claims against Saraf "in his official capacity" remain. Accordingly, defendant's motion for summary judgment will be denied as moot as to that issue.

Finally, defendant contends that judgment should enter against plaintiff on its punitive damages claim because punitive damages are not available for breaches of contract. *See Ferguson Transp., Inc. v. North Am. Van Lines, Inc.*, 687 So. 2d 821, 822-23 (Fla. 1996). Plaintiff, however, has not contended that it is entitled to punitive damages. Defendant's motion will therefore be denied as moot as to that issue.

4

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

**III.    Analysis**

As noted, plaintiff claims (1) actual damages of $1,039,904.99; (2) interest at the rate of 1.5% per month, for a total of $162,379.14; (3) late fees of 20%, for a total of $207,981.00; and (4) reasonable costs and attorneys' fees. Defendant contends that plaintiff is not entitled to summary judgment as to any of these damages, contending instead that defendant is entitled to attorneys' fees.

    **A.    Actual Damages and Interest**

Defendant contends that plaintiff has not properly proved its damages because the

invoice code list it relied on to make its spreadsheet has not been authenticated or otherwise shown to be admissible.

Under Fed. R. Evid 1006, a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Therefore, if the information plaintiff used to create its spreadsheets is admissible, the spreadsheets themselves are admissible. Plaintiff based its spreadsheets on invoices from defendant's general ledger and its invoice code list.

There is no dispute as to whether defendant's general ledger is admissible. Defendant only contends that its invoice code list has not been authenticated and that it is inadmissible hearsay.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In his deposition, Zenith's chief executive officer, Akash Saraf, described the invoice code list and how it was used to calculate payments owed to plaintiff. (Saraf Dep. at 183-84, 186-88). In addition, the document was produced by defendant to plaintiff during discovery as the invoice code list. Although the fact that a defendant may have produced a document is alone not enough for authentication, Saraf's deposition testimony is sufficient.

Finally, the document is admissible under Fed. R. Evid. 803(6) as a record of a regularly conducted activity. A record qualifies as a record of a regularly conducted activity if (1) "the record was made at or near the time by . . . someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling,

whether or not for profit"; (3) "making the record was a regular practice of that activity"; (4) the "conditions are shown by the testimony of the custodian or another qualified witness"; and (5) "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(A)-(E).

At his deposition, Saraf testified that he had personal knowledge that (1) the invoice code list was created by Zenith's employees and (2) Saraf and other employees used the code list on a regular basis to calculate the amount of money Zenith owed DSSDR. (Saraf Dep. at 183-88). Because he had personal knowledge of the list, how it was made, and how it was used, he is a qualified witness under Rule 803(6). *See United States v. Cameron*, 699 F.3d 621, 641 n.10 (1st Cir. 2012) (Rule 803(6) requires that a qualified witness "be one who can explain and be cross-examined concerning the manner in which the records are made and kept" (internal quotation omitted)). Defendant has produced no evidence nor made any contention suggesting the invoice code list is not trustworthy. Accordingly, it qualifies as a record of a regularly conducted activity and is therefore admissible. *See id.* (stating that "the ordinary business circumstances described by the qualified witness suggest trustworthiness at least where absolutely nothing in the record in any way implies lack thereof" (internal quotation omitted)).

Plaintiff's spreadsheets, which summarize the general ledger entries with the use of the invoice code list, are therefore admissible. They show that defendant owes plaintiff a total of $1,039,904.99. (Docket No. 153, Ex. C). The licensing agreement between the parties also requires defendant to pay interest of 1.5% per month on unpaid revenues, for a total of $162,379.14. (*Id.*; Licensing Agreement ¶ 8.3). Accordingly, plaintiff is entitled to

7

$1,202,284.13 in actual damages and interest.[4]

## B.     Late Fees

The licensing agreement provides for a late fee of 20% on past due payments. (Licensing Agreement ¶ 8.3). Defendant contends that the late-fee provision in the licensing agreement is unenforceable under Florida law because it is a penalty provision disguised as a liquidated damages provision.[5] Plaintiff contends that no Florida court has held that a late fee is unenforceable.

"A contract term which provides that a party must pay a penalty for breaching a contract is unenforceable." *Crosby Forrest Products, Inc. v. Byers*, 623 So. 2d 565, 567 (Fla. Dist. Ct. App. 1993). A penalty is "a sum named, which is disproportionate to the damages which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion." *Id.* (quoting 5 Williston on Contracts § 776). A liquidated damages provision will be upheld when (1) "the damages consequent upon a breach [are] not readily ascertainable" and (2) "the sum stipulated to be forfeited [is] not so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages." *Lefemine v. Baron*, 573

---

[4] Defendant contends that because plaintiff canceled the licensing agreement on August 31, 2013, it is not entitled to damages on its breach-of-contract claim after that date. (*See* Ryan Aff., Docket No. 157, Ex. 1). It is undisputed, however, that defendant continued to use plaintiff's technology after that date. (Saraf Dep. at 91-92). No alternative way of calculating damages has been offered by either party. Furthermore, because the license agreement was not exclusive, (Licensing Agreement ¶ 2.4), any profit plaintiff may have earned by licensing its technology to others would not mitigate its damages. *See Teradyne, Inc. v. Teledyne Indus., Inc.*, 676 F.2d 865, 868 (1st Cir. 1982) (proceeds of resale are not to be credited to buyer if the seller is one who could have had the benefit of both the original and resale contract had there been no breach by the buyer).

[5] The licensing agreement states that it "shall be governed by and construed in accordance with the laws of the State of Florida and the United States." (Licensing Agreement ¶ 13.11).

So. 2d 326, 328 (Fla. 1991).

Thus, late-fee provisions such as the one here must are enforceable only if they are "calculated to compensate, rather than to punish a breach." 24 Williston on Contracts § 65:1. In other words, a late-fee provision is proper if it is designed to compensate the party owed money for the tardiness of the payment. The late fee of 20% in this case, however, is grossly disproportionate to any damages that might follow from a late payment. In addition, the damages arising from a late or non-payment under the licensing agreement are easy to calculate. The contract already contemplates damages for breach of contract, interest on those damages, and damages for reasonable costs plaintiff accrues when collecting past-due payments. Because those provisions are enough to make plaintiff whole, the 20% late fee is an unenforceable penalty. *See Crosby*, 623 So. 2d at 567.

Accordingly, as there are no disputes of material fact remaining on the issue, summary judgment will be granted for defendant as to the late-fee provision.

### C. <u>Attorneys' Fees</u>

The parties have cross-moved for summary judgment on the issue of attorneys' fees. Under Florida law,

> [i]f a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.

Fla. Stat. § 57.105(7). "[T]he party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." *Moritz v. Hoyt Enterprises, Inc.*, 604 So. 2d 807, 810 (Fla. 1992). Section 57.105(7) "is designed to even the playing field, not expand it beyond the terms of the agreement." *Florida Hurricane Protection*

*and Awning, Inc. v. Pastina*, 43 So. 2d 893, 895 (Fla. Dist. Ct. App. 2010).

The License Agreement states that "Licensee shall reimburse Licensor for all reasonable costs incurred (including reasonable attorney's fees) *in collecting past-due amounts*." (License Agreement ¶ 8.3) (emphasis added). The parties agree that the relevant inquiry is who the "prevailing party" is on the portions of the breach-of-contract claim brought to collect past-due payments. *See Pastina*, 43 So. 2d at 895-96; *Subway Restaurants v. Thomas*, 860 So. 2d 462, 464 (Fla. Dist. Ct. App. 2003). "The fact that the claimant obtains a net judgment is a significant factor but it need not always control the determination of who should be considered the prevailing party." *Trytek v. Gale Indus., Inc.*, 3 So. 2d 1194, 1201 (Fla. 2009).

The complaint originally involved two claims of breach of contract. First, the complaint alleged that defendant had not paid plaintiff the percentage of revenue it was entitled to under the contract. (Second Am. Compl. ¶ 36). Second, the complaint alleged that defendant had sold substantially all of its assets, and had not paid plaintiff the percentage of revenue from the sale that it was entitled to under the contract. (*Id.*). Defendant contends that both of these claims involve "past-due payments" under the contract. Defendant further contends that it is the "prevailing party" because plaintiff voluntarily dismissed the $4.1 million breach-of-contract claim concerning the sale of defendant's assets. (*See* Second Am. Compl. ¶¶ 23, 36).

The attorneys' fee provision of the contract involves past-due payments for licensing fees that defendant owes plaintiff. (Licensing Agreement ¶ 8.3). It does not refer to payments defendant would owe plaintiff if it merged with or sold substantially all of its assets to another company. (*Compare id.* (discussing attorneys' fees regarding collection of past-due licensing payments) *with id.* ¶ 13.1(a) (discussing payments for merger or sale of assets but including no

10

attorneys' fee provision)). Therefore, the breach-of-contract claim for past-due licensing fees is the only claim in this case important to the "prevailing party" inquiry.[6]

Plaintiff prevailed on that breach-of-contract claim, and therefore has obtained a net judgment on the significant issue in the litigation. In addition, defendant's fault is also part of the "prevailing party" inquiry. *See KCIN, Inc. v. Canpro Inv.*, 675 So. 2d 222, 223 (Fla. Dist. Ct. App. 1996) (noting that whether an "unjust reward to a party whose conduct caused the failure of the contract" affects the "prevailing party" inquiry). Defendant admitted that it did not pay plaintiff the percentage of revenue it was required to under the licensing agreement. (Saraf Dep. at 91-92).

The Court accordingly concludes that plaintiff is the "prevailing party" under Florida law. Plaintiff's motion for summary judgment will therefore be granted as to attorneys' fees and costs. Defendant's motion for summary judgment will be denied as to that issue.

## IV. Conclusion

For the foregoing reasons:

1. DSSDR, LLC's motion for summary judgment is GRANTED as to actual damages, interest on its breach-of-contract claim, and attorneys' fees, and DENIED in all other respects.

2. Zenith Infotech, Ltd.'s motion for summary judgment is DENIED as to attorneys'

---

[6] Even if the other breach-of-contract claim was important to the "prevailing party" inquiry, plaintiff stipulated to dismissal of that claim as a tactical choice to streamline the litigation. In cases where a plaintiff has voluntarily dismissed claims for tactical reasons, the Florida courts have held that voluntary dismissal does not make the defendant the prevailing party. *See Padow v. Knollwood Club Ass'n, Inc.*, 839 So. 2d 744, 746 (Fla. Dist. Ct. App. 2003 (defendant not prevailing party where he paid substantially all of the plaintiff's claim before the voluntary dismissal); *Sopena v. Rowland Coffee Roasters, Inc.*, 716 So. 2d 799, 800 (Fla. Dist. Ct. App. 1998) (defendant was prevailing party where voluntary dismissal was "not a strategic determination"); *Simmons v. Schimmel*, 476 So. 2d 1342, 1345 (Fla. Dist. Ct. App. 1985) (co-defendant not prevailing party where plaintiff dismissed him prior to trial in "a strategic move to avoid jury confusion").

fees, and DENIED as moot as to the claims against Saraf and for punitive damages.

The Court will award damages to DSSDR, LLC, for actual damages and interest in the amount of $1,202,284.13. DSSDR is also entitled to reasonable attorneys' fees and costs in accordance with this opinion. DSSDR shall file any claim for such attorneys' fees or costs, together with any supporting documentation, on or before April 29, 2014.

**So Ordered.**

Dated: April 8, 2014

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge