# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DSSDR, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. |
| v. ) | 13-10026-FDS |
| ) | |
| ZENITH INFOTECH, LTD., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**SAYLOR, J.**

This is a contract dispute. Plaintiff DSSDR, LLC and defendant Zenith Infotech, Ltd. entered into a licensing agreement in 2009 that granted defendant the use of certain technology developed by plaintiff. Plaintiff sued defendant for, among other things, breach of contract.

On December 9, 2013, the Court granted summary judgment in plaintiff's favor as to liability on the claim for breach of contract but denied it without prejudice as to damages. On March 19, 2014, plaintiff filed a motion for summary judgment as to its damages. On April 8, 2014, the Court granted the motion as to a portion of the damages and denied it as to the remainder.

On May 1, 2014, plaintiff filed a motion claiming $244,940.63 in attorneys' fees. For the following reasons, that motion will be granted in part and denied in part.

I. **Background**

   A. **Factual Background**

The facts summarized below are undisputed.

On August 15, 2009, DSSDR, LLC and Zenith Infotech, Ltd. entered into a written licensing agreement entitled the "2009 Appliance and Remote License Agreement." (License Agreement, Docket No. 131, Ex. 2 at *1). In the License Agreement, DSSDR licensed to Zenith the rights to use, market, and copy certain technology it had developed. (License Agreement ¶ 2.1). That technology included know-how for a client-side backup application that allowed nearly instant server system recovery, and know-how for certain remote data storage and data center operations systems. (License Agreement, Ex. A at *9-10).

In return, Zenith agreed to pay DSSDR 7% or 7.5% of the revenues from its use, sale, or lease of DSSDR's technology, depending on whether the technology was used as part of a "Licensed Appliance Product" or an "Off-Site Storage service" as defined by the agreement. (Licensing Agreement ¶¶ 8.1, 8.3, Ex. A at *11). The parties also agreed that:

> All past-due payments will incur a late fee of twenty percent (20%) as well as accrue interest at a rate of 1.5% per month or the highest rate permissible by law, whichever is less, on the unpaid balance from the due date until paid in full. Licensee shall reimburse Licensor for all reasonable costs incurred (including reasonable attorney's fees) in collecting past-due amounts.

(License Agreement ¶ 8.3). Finally, the parties agreed that if Zenith merged with another company or sold substantially all of its assets, it would pay DSSDR 7.5% of the proceeds from the sale of the product lines associated with DSSDR's licensed technology. (*Id.* ¶ 13.1(a)).

Since August 2012, Zenith has used the technology DSSDR licensed to it under the agreement, but has not paid any fees. (Bensinger Aff., Docket No. 131, Ex. 5 ¶ 9).

2

B.      **Procedural Background**

This action was filed on August 6, 2012, in state court in California. The original complaint alleged claims against Zenith, Zenith's CEO, Continuum Managed Services, LLC, Continuum's CEO, and Summit Partners, L.P. On August 16, 2012, the case was removed to the United States District Court for the Northern District of California.

On October 4, 2012, defendants filed a motions to dismiss and motions to transfer venue. On January 3, 2013, the motions to transfer were granted, and the case was transferred to this Court. The transfer order stated that "[p]laintiffs have not met their burden to demonstrate that venue in this district is proper. . . . [B]ecause all defendants agree, and [p]laintiffs do not dispute, that this action may have been brought in . . . Massachusetts, the Court exercises its discretion to transfer this action to Massachusetts." *DSSDR LLC v. Zenith Infotech Ltd.*, 2013 WL 57863, at *3 (N.D. Cal. Jan. 3, 2013).

On May 8, 2013, the complaint was amended. The first amended complaint alleged claims of (1) intentional interference with contractual relations and prospective economic advantage, (2) breach of contract, and (3) declaratory relief. Defendants Continuum, the CEO of Continuum, and Summit were voluntarily dismissed from the case. A second amended complaint was filed on August 5, 2013, adding a claim under Florida's Deceptive and Unfair Trade Practices Act.

On October 18, 2013, the Court issued an order dismissing several of the claims. Prior to the Court's order, plaintiff had moved for partial summary judgment on its breach-of-contract claim against defendant. On December 9, the Court granted summary judgment in plaintiff's favor as to the breach-of-contract claim, but denied it without prejudice as to the damages arising

3

out of that claim.

On March 14, 2014, plaintiff stipulated to the dismissal of all of its remaining claims except for its breach-of-contract claim. On March 19, plaintiff moved for summary judgment on its contract damages against defendant. On April 8, the Court granted summary judgement in plaintiff's favor on a portion of its requested damages, including reasonable attorneys' fees and costs. On May 1, plaintiff filed a motion requesting $244,940.63 in attorneys' fees.

## II. **Attorneys' Fees**

It is undisputed that the License Agreement, including the provision for attorneys' fees, is governed by Florida law. Under Florida law, a litigant can recover attorneys' fees and costs pursuant to a valid fee-shifting agreement in a contract. *See Islander Beach Club Condominium v. Skylark Sports, L.L.C.*, 975 So. 2d 1208, 1211 (Fla. Dis. Ct. App. 2008). The Court has already determined that DSSDR is entitled to reasonable attorneys' fees that it incurred collecting past-due amounts from Zenith under the License Agreement; the only issue left is the amount of the award. (*See* License Agreement ¶ 8.3)

In *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), the Florida Supreme Court adopted the "lodestar" method of calculating reasonable attorneys' fees. 472 So. 2d at 1150. As the *Rowe* court explained:

> in computing an attorney fee, the trial judge should (1) determine the number of hours reasonably expended on the litigation; (2) determine the reasonable hourly rate for this type of litigation; (3) multiply the result of (1) and (2); and, when appropriate, (4) adjust the fee on the basis of the contingent nature of the litigation or the failure to prevail on a claim or claims.

*Id.* at 1151-52.

A.      **Evidence of the Lodestar Calculation Proffered by Plaintiff**

"The first step in the lodestar process requires the court to determine the number of hours reasonably expended on the litigation. . . . To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed." *Rowe*, So. 2d at 1150. As evidence, plaintiff has presented more than 80 pages of invoices detailing the work its attorneys performed, the time spent doing that work, and how much it was charged for that work. Plaintiff has also submitted an affidavit from one of its attorneys, Francis Connor, stating that "the number of hours worked by predecessor counsel, myself, and my colleagues . . . has been appropriate, necessary, and reasonable." (Francis Aff. ¶ 9).

Although the dispute in this case was ultimately narrowed to a simple breach-of-contract claim, it appears that plaintiff expended significant time and effort conducting discovery to obtain evidence to substantiate that claim. Defendant also admitted it did not pay plaintiff the payments it was required to under the agreement after litigating the action for almost two years. Most of the hours plaintiff's attorneys worked on the case therefore appear to be reasonable.

"The second half of the equation . . . requires the court to determine a reasonable hourly rate for the services of the prevailing party's attorney." *Rowe*, 472 So. 2d at 1151. Although plaintiff has submitted evidence of its attorneys' hourly rates, it has submitted no evidence as to the reasonable hourly rate for those services. Ordinarily, this would be enough to warrant the rejection of an award of attorneys' fees. *See Brewer v. Solovsky*, 945 So. 2d 610, 611 (Fla. Dist. Ct. App. 2006) (rejecting award of attorneys' fees because the attorney did not testify "as to the reasonableness of the hours expended and the hourly rate").

However, the Court is "not required to abandon . . . common sense in evaluating the

reasonableness of an award." *Trumbull Ins. Co. v. Wolentarski*, 2 So. 3d 1050, 1057 (Fla. Dist. Ct. App. 2009). A review of the invoices shows that plaintiff retained counsel from the Law Offices of Paul J. Steiner to represent it in California. Steiner charged $430 per hour for his work, $395 per hour for work by an unnamed individual with the initials "SLM," $225 per hour for work by a second unnamed individual with the initials "SLM" (referred to as "SLM2"), $175 per hour for work by an unnamed individual with the initials "OFI," and $165 per hour for work by an unnamed individual with the initials "OI." Plaintiff retained counsel from the law firm Barton Gilman, LLP, which charged between $325 and $350 per hour for work by partners Robert Elmer, Francis Connor, and Robert Shindell, between $225 and $250 per hour for work by senior associates Brendan Malvey and Lindsey Gil, $190 per hour for work by senior associate Jenna Pingitore, and $75 per hour for work by paralegal Jeffrey McDonald.

Although the evidence is thin, the rates appear to be generally reasonable and are not challenged by defendant. The Court therefore will not modify the lodestar calculation based on the reasonableness of the rates charged by plaintiff's attorneys.

According to the invoices submitted by plaintiff, the lodestar amount for the work its attorneys performed is $275,807.23. (Francis Aff. ¶¶ 7-8). Plaintiff has reduced the lodestar amount by $30,866.60 for claims that it brought that were unrelated to collecting past-due amounts under the License Agreement. (*Id.*). It seeks a total of $244,940.63 in attorneys' fees.[1]

### B. Objections to the Lodestar Calculation by Defendant

#### 1. Transfer

Defendant first objects to the award of attorneys' fees to plaintiff for the work its counsel

---

[1] Plaintiff's request for $244,940.59 appears to be an error in arithmetic. (*See* Connor Aff. ¶ 3).

in California performed. It contends that those fees are not reasonable because there was no basis for filing the lawsuit in California. Plaintiff contends that it is entitled those fees because defendant continued to use its counsel from California and therefore was not prejudiced by the transfer.

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." This case was transferred from California to Massachusetts because the original trial court found that venue in the Northern District of California was not proper. The transfer was based on the court's determination that plaintiff had failed to show that the facts giving rise to its claims arose in that district. *DSSDR*, 2013 WL 67863, at *2.

When ascertaining the number of hours "reasonably expended" on a case, the term "'[r]easonably expended' means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute. It is *not* necessarily the number of hours actually expended by counsel in the case." *In re Estate of Platt*, 586 So. 2d 328, 333 (Fla. 1991) (emphasis in original). This case should not have been brought in California because the License Agreement was not executed, performed, or breached in California; none of the parties in the lawsuit reside in California; and plaintiff suffered no injury in California. *DSSDR*, 2013 WL 67863, at *3. Nothing in the record suggests those facts are not true.

Plaintiff therefore created unnecessary work by originally filing the case in California, and thus the work done to transfer the case to Massachusetts was not reasonable. The work done by plaintiff's new counsel in Massachusetts to become acquainted to the case was also not reasonable because it was duplicative. If plaintiff had brought suit in a proper forum, those

7

hours would not have been expended.  *See Fidelity Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 98 So. 3d 672, 676 (Fla. Dis. Ct. App. 2012) (considering reductions in fees for "attorney time

. . . that was associated with changes in counsel").  However, not all of the work done by plaintiff's attorneys in California is duplicative of the work done by its attorneys in Massachusetts.  Only the time spent transferring the case and accommodating new counsel is duplicative.  Only those fees will be excluded from the lodestar calculation.

A review of the invoices plaintiff provided shows that it was charged $7,203.57 for work concerning the transfer of the case from California to Massachusetts and the substitution of counsel once the case was transferred.  Accordingly, that amount will be subtracted from the lodestar calculation.

### 2. Work Unrelated to Past-Due Amounts

Defendant next contends that many of the fees detailed in plaintiff's invoices are not recoverable under the License Agreement.  "The right to attorney's fees under any contractual provision is limited by the terms of such provision."  *Islander Beach Club*, 975 So. 2d at 1211 (quoting *Bowman v. Kingsland Dev., Inc.*, 432 So. 2d 660, 664 (Fla. Dist. Ct. App. 1983)).  Because the License Agreement only covers fees expended to collect past-due amounts under the agreement, any fees expended for a different purpose are not recoverable.

Defendant outlines two categories of fees in plaintiff's invoices that are unrelated to collection of past-due amounts under the License Agreement.  The first category is work regarding claims against former defendants Continuum and Summit.  The second is work regarding plaintiff's tort claims.  Defendant contends that because the work done for those

8

claims cannot be sufficiently differentiated from other work, there should be a 50 percent reduction of plaintiff's fees in the time periods that plaintiff pursued those claims.

The only claim in this case related to collection of past-due amounts under the License Agreement is the breach-of-contract claim. *DSSDR, LLC v. Zenith Infotech, Ltd.*, 2013 WL 6489944, at *3 (D. Mass. Dec. 9, 2013). Therefore, the fees for work regarding the claims against Continuum and Summit, and plaintiff's now-dismissed tort claims, should be excluded from the lodestar calculation.

However, a review of plaintiff's invoices shows that the work performed on those claims appears to be separable from the work performed on the breach-of-contract claim, and therefore a 50 percent reduction is not appropriate. *See Franzen v. Lacuna Golf Ltd. Partnership*, 717 So. 2d 1090, 1093 (Fla. Dist. Ct. App. 1998) (court "must assess each claim individually . . . and determine whether the investigation and prosecution of the successful claims can be separated from unsuccessful claims" (internal quotations and citations omitted)). In particular, plaintiff has already reduced its request for fees by $30,866.60 for work done on those claims. (Connor Aff. ¶¶ 7-8). Further review of plaintiff's invoices shows that an additional $13,722 was expended on those claims. Accordingly, the lodestar calculation will be reduced by that amount.

### 3. Redacted Entries

Finally, defendant contends that the entries that are redacted in plaintiff's invoices should be excluded from the lodestar calculation. Plaintiff contends that the redactions, which were made to protect privileged information, can be considered even with the redactions.

A review of the relevant redacted entries shows that they all, save one, can be evaluated

9

even with the redactions.[2]  However, one entry on July 1, 2013, is completely redacted and is associated with a $70 charge.  Because the Court cannot evaluate that entry, it will be excluded from the lodestar calculation.

    C.    **Lodestar Adjustments**

The total amount of attorneys' fees listed in plaintiff's invoices is $275,807.23.  Plaintiff has reduced that total by $30,866.60.  And as explained above, the Court further reduces that total by $7,203.57, $13,722, and $70.  The final lodestar figure is therefore $223,945.03.

"Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon . . . the 'results obtained.'" *Rowe*, 472 So. 2d at 1151.[3]  Plaintiff prevailed on its breach-of-contract claim and was awarded damages and interest in the amount of $1,202,284.13, practically the full value of its claim.  The litigation lasted almost two years, and defendant vigorously resisted plaintiff's attempts to recover past-due amounts under the License Agreement despite eventually admitting that it owed those amounts.  The Court therefore declines to add or subtract from the fee based on the results plaintiff obtained.

Accordingly, plaintiff's motion for attorneys' fees will be granted in the amount of $223,945.03, and otherwise denied.

---

[2] Some of the completely redacted entries are irrelevant because they have no fees associated with them. Others have already been removed from the lodestar calculation by plaintiff.

[3] The lodestar calculation can also be adjusted based on a "contingency risk" factor, which is not relevant in this case because plaintiff's attorneys were not paid on a contingency basis.  *See Rowe*, 472 So. 2d at 1151.

## III. Conclusion

For the foregoing reasons, plaintiff's motion for attorneys' fees is GRANTED in the amount of $223,945.03, and otherwise DENIED.

**So Ordered.**

                                                    /s/ F. Dennis Saylor  
                                                   F. Dennis Saylor IV  
Dated: June 20, 2014                         United States District Judge